AMERICAN HOME PRODUCTS COR-
PORATION, Plaintiff,

v.

Robert H. FINCH, Secretary of Health,
Education and Welfare,

and

Herbert L. Ley, Jr., Commissioner of
Food and Drugs, Defendants.
Civ. A. No. 3744.

United States District Court
D. Delaware.
Aug. 18, 1969.

William E. Wiggin, Richards, Layton & Finger, Wilmington, Del., Samuel W. Murphy, Jr., Andrew J. Kilcarr, Donovan, Leisure, Newton & Irvine, New York City, of counsel, for plaintiff.

F. L. Peter Stone, U. S. Atty., Wilmington, Del., William W. Goodrich, Asst. Gen. Counsel, U. S. Dept. of Health, Education and Welfare, Washington, D. C., of counsel, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LATCHUM, District Judge.

This action arises under the Federal Food, Drug and Cosmetic Act. Plaintiff, a manufacturer of certain antibiotic drugs, on July 9, 1969, filed a complaint and motion seeking a preliminary injunction and other relief to stay the defendants' implementation, pending a hearing, of certain orders, the effect of which was to require the plaintiff to recall its drugs from the market by July 23, 1969. On July 16, 1969, the defendants filed affidavits in opposition to plaintiff's motion for injunctive relief and moved to dismiss the complaint or alternatively for summary judgment. The matter came on for hearing on July 22, 1969, at which time the defendants were temporarily restrained from enforcing the orders of defendants pending further order, findings and decision of this Court.

On the basis of the record before this Court, the following findings of fact and conclusions of law are made and entered:

## FINDINGS OF FACT

1. Plaintiff is a Delaware corporation and the defendants, Robert H. Finch and Herbert L. Ley, Jr., are, respectively, the Secretary (the "Secretary") of Health, Education and Welfare and the Commissioner (the "Com-

missioner") of the Food and Drug Administration ("FDA").

2. The plaintiff, through its subsidiaries and divisions, manufactures and markets certain prescription antibiotic drugs ("plaintiff's drugs"):

(a) Wycillin SM Injection 400 and Wycillin SM Injection 600, each of which contains as its active ingredients procaine penicillin G and streptomycin sulfate.

(b) Bicillimycin All-Purpose Injection, which contains as its active ingredients benzathine penicillin G, potassium penicillin G, procaine penicillin G, and streptomycin sulfate.

(c) Bicillin-Sulfas, Suspension and Tablets, each of which contains as its active ingredients benzathine penicillin G, sulfadiazine, sulfamerazine, and sulfamethazine.

(d) Pen-Vee Sulfas, Suspension and Tablets, each of which contains as its active ingredients phenoxymethyl penicillin, sulfadiazine, and sulfamerazine.

3. Pursuant to § 507(a) of the Food, Drug and Cosmetic Act ("the Act"), 21 U.S.C. § 357(a), which was applicable only to penicillin when first enacted in 1945 and which was later amended in 1947 to include streptomycin, and regulations contained in part 146a of 21 CFR establishing standards of identity, strength, purity and quality for plaintiff's products, FDA has certified batches of each of plaintiff's products to be safe and effective for the uses indicated in its labeling (including "package inserts") for periods beginning in 1954, 1953, 1952, and 1956, respectively, in the sequence as listed in paragraph 2.

4. A total of 569 batches have been so certified,[1] each certification representing a determination by the Commissioner that the drug certified is safe

and effective. The last such certification, involving a batch of Bicillin-Sulfas, Suspension, was on April 23, 1969.

5. In 1962 Congress amended §§ 505 and 507 of the Act. Section 505 (21 U.S.C. § 355) requires manufacturers of "new drugs", other than antibiotics covered by § 507, to file with FDA a new drug application. The 1962 amendments required for the first time that new drug applications be supported by "substantial evidence" of their efficacy. Section 507 was amended to expand its coverage to include "other antibiotics" than those previously specified therein (which specification included penicillin and streptomycin), to add a definition of "antibiotic", to impose certain reporting requirements, and to provide for the possible future coverage under § 507 of "other antibiotics" previously covered under § 505. The certification provisions of § 507(a), however, pursuant to which plaintiff's products had been continuously certified as effective and safe, were not amended.

6. In 1966 the then Commissioner undertook to evaluate the efficacy of all drugs, marketed under new drug applications which became effective between 1938 and October 10, 1962, under § 505 as safe and to re-evaluate the efficacy of antibiotic drugs previously certified as safe and effective pursuant to § 507, including plaintiff's drugs, and contracted with the National Academy of Sciences—National Research Council to conduct said evaluation and re-evaluation.

7. On October 6, 1966, the Commissioner caused to be published in the Federal Register an order requiring manufacturers of drugs certified pursuant to § 507 to submit certain data to FDA within thirty days, such data to be utilized in connection with the NAS/NRC drug review aforementioned.[2] Plaintiff complied with this re-

---

1. Since the first of plaintiff's drugs were approved in 1952, plaintiff has distributed approximately 59,088,000 doses of them for prescription by practicing physicians.

2. This order required the submission of unpublished articles or other data pertinent to an evaluation of the claims, but did not specifically require the submission of "well-controlled clinical studies." 31 Fed. Reg. 13015.

quest on October 31, 1966 with respect to its products involved in this case, without, however, waiving its right to dispute the authority of FDA to require the submission of such data for such purpose.

8. Defendants received the NAS/NRC's reports on plaintiff's drugs in or about September, 1968. The reports concluded that plaintiff's penicillin-streptomycin products were "ineffective as fixed combinations". The basis of such conclusions appears to be a determination that plaintiff's drugs are not relatively more effective than their individual components used separately, or than other antibiotics.

9. The reports acknowledge that simultaneous uses of penicillin and streptomycin or penicillin and sulfanomide are effective for certain diseases and infections.

10. Prior to initiation of the NAS/NRC study, public conferences were held between representatives of NAS/NRC, FDA, the medical profession and the drug industry, and public statements by FDA representatives were made concerning the then proposed study, and guidelines for the study were laid down. Throughout these conferences and until December 24, 1968, plaintiff had no reason to believe that a finding of "ineffective as a fixed combination" would be made. Rather, plaintiff was led to believe that findings would be limited to "effective, probably effective, possibly effective, or ineffective". Plaintiff was not informed until April 2, 1969 that the evidence upon which FDA had certified its drugs for many years was inadequate, or that long clinical experience with a drug would not be considered important evidence of efficacy—that is, of substantially equivalent weight as the type of controlled clinical studies now required in respect of new drugs. In addition, it had some reason to believe, until April 2, 1969, that a hearing would be held before any drug was removed from the mar-

ket by FDA for lack of evidence of efficacy.

11. On April 2, 1969, at least six months after receiving NAS/NRC's reports, the Commissioner caused to be published in the Federal Register (34 Fed.Reg. 6006–07) notices of intention to amend FDA regulations so as to delete plaintiff's products from the list of drugs acceptable for certification pursuant to § 507. The Commissioner stated in those notices that he "concurred" in the findings by NAS/NRC that plaintiff's products were "ineffective" or "ineffective as fixed combinations" and that there is a "lack of substantial evidence" supporting the efficacy of these combinations. The notices invited plaintiff to submit "pertinent data". No mention was made of a hazard of any kind.

12. On May 1, 1969 plaintiff submitted such data and requested a hearing. The submission was in four parts: a general examination of the uses of antibiotic combinations, based upon both theoretical and practical considerations; a discussion of the uses of penicillin-streptomycin combinations, commenting briefly on the NAS/NRC reports and citing numerous scientific studies; a similar discussion of penicillin sulfanomide combinations; and an examination of the legal validity of the Commissioner's intended action.

13. On June 13, 1969 the Commissioner caused to be published in the Federal Register Orders deleting plaintiff's products from the list of antibiotic drugs eligible for certification, prohibiting all further certification, and revoking previously issued certificates. The reasons stated by the Commissioner for these actions were that plaintiff's May 1, 1969 submission did not contain any "new clinical data", did not "provide substantial evidence of the effectiveness of such combination drugs", that "there are known hazards associated with the use of each component of such combination", and that the use of each product involved an "unwarranted

hazard". This was the first mention of such a hazard and FDA has never suggested at any time that plaintiff's drugs involved an "imminent hazard".

14. The June 13th Orders provided that objections thereto could be submitted and a hearing requested within thirty days, but that withdrawal of the products from the market must be completed within forty days. The Orders also state that "a statement of reasonable grounds for a hearing must identify the claimed errors in the NAS/NRC evaluation and identify any adequate and well-controlled investigations on the basis of which it would reasonably be concluded that the combination drugs would have the effectiveness claimed and would be safe for their intended use". Plaintiff submitted objections within the thirty-day period, on July 9, 1969, and again requested a hearing. The Commissioner has not yet ruled on these objections or on the request.

15. The Commissioner has stated publicly and the brief filed herein on behalf of the defendants states that no hearing will be held, if at all, until plaintiff's drugs have been removed from the market.

16. Defendants do not contend that plaintiff's drugs represent an "imminent hazard" to public health and this Court finds, on the basis of defendants' position, the long period during which these products have been widely used, and the Commissioner's repeated certifications of safety over periods ranging up to 17 years, that no such "imminent hazard" is presented.

17. If plaintiff is forced to recall its drugs from the market it will suffer a substantial loss during the period of their removal; and such drugs, even if they are subsequently determined to be eligible for certification once again, will never recapture their present position because of a permanent loss of medical confidence and a permanent loss of sales to competing products.

## CONCLUSIONS OF LAW

*Jurisdiction*

1. The amount in controversy exceeds the sum of $10,000 and the pleadings, affidavits, briefs, and arguments, herein reflect an actual justiciable controversy between the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706; Section 1361 of the Judicial Code, 28 U.S.C. § 1361; Section 1351 of the Judicial Code, 28 U.S.C. § 1351; the due process clause of the Fifth Amendment of the Constitution and the general equity powers of the court. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331(a) and 1337. See Abbott Laboratories v. Gardner, 387 U.S. 136, 143–49, 87 S.Ct. 1507, 18 L. Ed.2d 681 (1967).

2. The subsection of the Act [21 U.S.C. § 371(f)], which authorizes judicial review in an appropriate Court of Appeals of the issuance, amendment or repeal of antibiotic regulations [21 U.S.C. § 357(f)] is not exclusive in that the subsection contains a "savings clause" which also provides:

"The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law" [21 U.S.C. § 371(f) (6)].

The "savings clause" is to be taken at its face value, and to be read in harmony with the policy favoring judicial review in proper cases. Abbott Laboratories v. Gardner, supra at 144, 87 S.Ct. 1507.

*Ripeness*

3. The issues raised in this case are "ripe" for judicial review under the tests laid down in Abbott Laboratories, supra, and in Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697, (1967). The Court is not concerned with the final resolution of factual issues raised by the parties. It is solely concerned with the legal question of whether, and in

what circumstances, plaintiff is entitled to a hearing by the Commissioner and whether the Commissioner should refrain from enforcing his Orders prior to his action on plaintiff's Objections to those Orders and Request for a Hearing.

4. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L. Ed. 638 (1938), relied upon by defendants is inapposite since it involved an attempt to prevent a hearing, whereas here plaintiff is attempting to enjoin enforcement of Orders until a hearing has been provided. The other cases cited by defendants are also inappropriate, either for the same reason, e. g. Whitehouse v. Illinois Central RR. Co., 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155 (1955), or because the administrative action involved was not "final", e. g. Turkel v. FDA, 334 F.2d 844 (6th Cir. 1964), or because an automatic stay was provided by the Act, thus making resort to the court unnecessary, e. g. Pharmaceutical Mfgs. Ass'n v. Gardner, 127 U.S.App.D.C. 403, 381 F.2d 271 (1967).

*Merits*

5. Section 507(f) of the Act requires a hearing in cases in which "reasonable grounds" are presented. In Dyestuffs & Chemicals, Inc. v. Flemming, 271 F.2d 281 (8th Cir. 1959), cert. denied 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960) relied upon by defendants, the Court, interpreting the "reasonable grounds" requirement of section 701(e) of the Act, held at 286:

"It is only after filing objections and ' * * * stating the grounds therefor, and requesting a public hearing upon such objections * * * ' that an interested party is entitled to a hearing. The hearing is solely for the purpose of receiving evidence 'relevant and material to the issues raised by such objections'. Certainly, then, the objections, in order to be effective and necessitate the hearing requested, must be legally adequate so that, if true, the order

complained of could not prevail. The objections must raise 'issues'. The issues must be material to the question involved; that is, the legality of the order attacked. They may not be frivolous or inconsequential. Where the objections stated and the issues raised thereby are, even if true, legally insufficient, their effect is a nullity and no objections have been stated."

In *Dyestuffs* the Court held the objections legally insufficient because the Supreme Court had recently interpreted the law so as to make the factual arguments raised as objections "frivolous". Here, however, no such recent and decisive resolution of the legal issues has been made. To this Court, unskilled in science or medicine, it appears that plaintiff's position, supported by affidavits and medical literature, presents meritorious factual issues to the Commissioner regarding the methods and materials used by the NAS/NRC; the philosophy of the panel members as to fixed combination drugs; the merits of other medical philosophies pertaining to such drugs; the effect of the medical literature dealing with plaintiff's products; and the weight to be given the long period of clinical experience with plaintiff's products. No holding of law has made these considerations irrelevant, and none of the Commissioner's orders has yet resolved them. Thus, the holding in *Dyestuffs, supra*, does not apply in this case.

6. Further, if plaintiff's objections do raise meritorious issues of fact plaintiff should be permitted to produce its evidence on the merits at a hearing. As Judge Kent said in Upjohn Co. v. Finch, 303 F.Supp. 241 (W.D.Mich. 1969), a case similar to this one:

"To any Court of law it would seem to be unfair to require Upjohn to submit *all* of its proofs by means of affidavits and the citations of various medical articles since many years of experience has demonstrated to all trial judges that the testimony of witnesses may serve the important

purpose of casting revealing light upon written material." [3]

7. While the Commissioner has not made a final determination as to whether "reasonable grounds" for a hearing exist, it appears to the Court that the objections of plaintiff presented to the Commissioner are not "frivolous", "inconsequential" or "legally insufficient". *Dyestuffs, supra.*

■ It appears to this Court that the Commissioner may have made the test of substantial evidence of effectiveness —the showing required to justify continued certification of the drug—the test of whether the plaintiff is entitled to a hearing. In their brief, the defendants note that on July 9, 1969, the plaintiff filed its objections to the Commissioner's order, and "offered what [the plaintiff] regarded as reasonable grounds for a hearing." [4] In a footnote at this point, the defendants comment: "These objections contain an Appendix of 109 references, most of them to laboratory or medical literature * * More than 90 of the papers have been reviewed, and none provide 'substantial evidence' to support Wyeth's [plaintiff's] claim." The defendants assert that the affidavits submitted in support of their motion for summary judgment "establish beyond preadventure (sic) that there is no 'substantial evidence' available from the world's medical literature to support the Wyeth promotional claims." [5] This conclusion by the Commissioner should not be the basis of a denial of a hearing to the plaintiff, because it would amount to the abrogation of the "reasonable grounds" test which the statute establishes as the necessary pre-condition for the granting of a hearing.

My reading of the *Dyestuffs* case and interpretation of the statutory scheme provided by § 507(f) of the Act indicates that "reasonable grounds" should be understood as meritorious, non-frivolous objections, which could most appropriately be resolved finally after a full hearing. Not only would a hearing provide the opportunity for the development of a more ample record, through the testimony and cross-examination of witnesses, but in light of the requirement of fundamental fairness implicit in due process, would seem to be the appropriate method to answer finally any meritorious objections to the Commissioner's decision to order removal of plaintiff's drugs from the market.

■ In the present action the Commissioner, without making a final determination whether such reasonable grounds exist, has proceeded to order the removal of plaintiff's drugs from the market. This action is immediately and irreparably harmful to plaintiff and anticipates either that no hearing will be held or that the outcome of a hearing will be favorable to the defendants.

This Court concludes from a reading of the pertinent legislative history and

3. Page 43—Opinion unreported.

4. Def.Br. p. 12.

5. Def.Br. p. 12. Counsel for the defendants also emphasized this position in his argument before this Court. "Now the Commissioner has said to Wyeth—and I would not want to be misunderstood here at all —he has said that he will not grant a hearing unless there is some indication that there is the type of evidence that he considers necessary, *substantial evidence,* consisting of adequate and well controlled studies.

Wyeth has responded by saying we rely on what is in the medical literature. We have no unpublished studies. We have to go to the literature and make our claims based on what we find there.
Now that literature has been analyzed by the National Academy. It's been analyzed by the affidavits here. It's been analyzed by the Commissioner's Bureau of Medicine. And all conclude that there is *no substantial evidence* in that presentation.
Now if that is the final conclusion, an order will be entered making the repeal of the regulations final without a hearing." Transcript pp. 51–52. (Emphasis added).

related portions of the Act that it was the intent of Congress, in the absence of a finding of imminent hazard to public health, that the Commissioner should proceed with appropriate respect for procedural fairness and extend to all interested parties a full opportunity to develop and present pertinent information prior to taking such drastic action. Since there is here no imminent hazard to public health, and indeed the Commissioner has certified for periods up to 17 years that these drugs are both safe and effective, it would appear that plaintiff is entitled to some relief from the present Orders pending appropriate action on its objections and request for a hearing.

*Relief*

8. Although on its face § 507(f) does not provide for an automatic stay of FDA's Orders upon the filing of objections thereto, other provisions of the Act, such as § 505(d), dealing with withdrawal by the Commissioner of a New Drug Application, § 507(h), dealing with withdrawal from the market of antibiotic drugs which were newly brought within the coverage of § 507 in 1962, and § 701(e) (2), dealing with Orders under miscellaneous sections of the Act, do provide for an automatic stay. In addition, although no automatic stay is specifically provided for in the regulations promulgated by the Commissioner to govern his procedure in cases such as this, those regulations appear ambiguous. Compare 21 CFR § 146.1(a)–(c) with 21 CFR § 146.1(d). The Court believes, therefore, that a stay is not prohibited as a matter of law and that the principles of equity and the Administrative Procedure Act, §§ 701–06 may be applied to determine whether such a stay should be granted. Abbott Laboratories, Inc. v. Gardner, supra.

■ 9. The factors to be considered by a court in deciding whether administrative action should be stayed were summarized in the often cited case of Virginia Petroleum Jobbers Ass'n v. F. P. C., 104 U.S.App.D.C. 106, 259 F.2d 921 (D.C.Cir.1958). These factors are, in brief summary, whether petitioner will suffer irreparable damage if the stay is not granted, whether the public interest calls for denial of a stay, and whether there is a substantial indication of probable success on the merits.

■ 10. As to the first factor, the plaintiff has demonstrated to the satisfaction of the Court that immediate enforcement of the removal Orders will cause it irreparable harm.

11. As to the second factor the public interest does not require this Court to permit defendants to act prior to their final determination of whether such action is proper. Indeed, it is clear to the Court that plaintiff's products had been sold, and used by practicing physicians for up to 17 years; that the Commissioner took no action on the NAS/NRC reports for six months after receiving the reports, and did not mention a hazard of any kind for at least nine months; that plaintiff, until April 2, 1969, had been led to believe that information on the basis of which its drugs had been certified for many years was sufficient; and until June 13, 1969, that it would be afforded an opportunity to present its evidence at a hearing; and that the Commissioner has never explained the precise nature of the evidence it is now demanding, being content to state that what has been presented has not been "substantial" or "adequate" or "well-controlled". Counsel for defendants suggest that plaintiff was required to and should have conducted "well-controlled clinical tests" on a continuing basis since 1952, or at least since 1966. Yet, the record shows that the FDA never demanded such tests of plaintiff until its June 13 Orders. It will be recalled that in its April 2 Orders, FDA requested only "pertinent data".

■ 12. As to the third factor, the likelihood of success on the merits is not of itself dispositive, and must be balanced against the other equitable considerations which *Virginia Petroleum*

requires the Court to consider. This Court has already found that the objections of plaintiff, adduced in support of a request for a hearing, are not "frivolous", "inconsequential" or "legally insufficient". In the exercise of its general equitable jurisdiction, the Court does not find it necessary to conclude that the plaintiffs must demonstrate a *substantial* likelihood of success on the merits before the Commissioner in order to grant an injunction at this time. The Court in *Virginia Petroleum* indicated in *dicta* that the exercise of the Court's equitable powers rested finally on a weighing of these different factors. The Court recognized that "injury held insufficient to justify a stay in one case may well be sufficient to justify it in another, where the applicant has demonstrated a higher probability of success on the merits." (259 F.2d 921, 925). It is fully consistent with this application of a balancing principle for the Court here to require a showing of less than a "substantial indication of probable success" on the merits if the likelihood of irreparable injury is clear.

■ Second, the context in which the test of a substantial likelihood of success on the merits was enunciated in *Virginia Petroleum* differs markedly from the circumstances of this case. In *Virginia Petroleum,* the Fourth Circuit considered whether there would be a substantial likelihood of success on appeal *to that court* to justify staying further Commission proceedings until the appeal was decided. Here, the plaintiff is not asking for a stay of FDA proceedings pending *judicial review,* but rather, is requesting a stay of FDA action pending appropriate action by the Commissioner on plaintiff's request for an *administrative hearing.* In *Virginia Petroleum* that Court reasoned that without a "substantial indication of probable success" on appeal, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." (259 F.2d 921, 925). Here,

the question is not of court interference with "ordinary processes of administration" pending *judicial review,* but rather one of insuring the functioning of the "ordinary processes of administration" necessary to protect the procedural rights of the plaintiff and prevent irreparable injury to him. Further, in contrast to a determination of probable success on appeal, this Court does not possess the necessary expertise to determine, in advance of a hearing before the appropriate administrative body, whether the plaintiff will have a "substantial likelihood of success" before that body.

13. The Court concludes, therefore, that the plaintiff should have an injunction restraining the defendants from taking any action to implement their Orders of June 13, 1969, until thirty days after the date on which the defendants have completed appropriate action on the objections filed by plaintiff on June 9, 1969 and that defendants' motions to dismiss and, for summary judgment should be denied.

### ORDER

THEREFORE, IT IS HEREBY ORDERED:

(1) That defendants and all persons acting under their direction and authority or in active concert or participation with them are enjoined and restrained, until 30 days after the date on which the Commissioner has completed action on plaintiff's Objections to the Commissioner's Orders and Request for Hearing, dated July 9, 1969, from taking or attempting to take any action against plaintiff or against any of the drugs involved in this litigation in reliance on the Orders of the Commissioner dated May 27, 1969, and published in Volume 34, Number 113 of the Federal Register of June 13, 1969 at pages 9333 and 9336, including, but not limited to, (a) repealing or amending §§ 146a.27, 146a.58, 146a.69 and 146a.67 of the Food and Drug Administration regulations for certification of antibiotic drugs (appearing in Volume 21 of the Code of Federal

Regulations); (b) failing or refusing to certify in timely fashion any batch of any of plaintiff's products, Bicillin, Sulfas, Pen-Vee Sulfas, Wycillin SM, and Bicillimycin, on any ground other than their failure to comply with the requirements of said regulations; (c) revoking the certificates of safety and effectiveness already issued for said products of plaintiff on any ground other than their failure to comply with the requirements of said regulations.

(2) That all further proceedings in this action are stayed until the expiration of the period during which the injunction above provided for is in effect, except upon application to this Court based upon a showing of good cause; and the defendants' time to answer is extended for the same period.

(3) That defendants' Motion to Dismiss and for Summary Judgment of Dismissal is denied.