**612**

AMERICAN HOME PRODUCTS COR-
PORATION, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary of
Health, Education and Welfare, and
Charles C. Edwards, Commissioner of
Food and Drugs, Defendants.

Civ. A. No. 3744.

United States District Court,
D. Delaware.

June 28, 1971.

William E. Wiggin, of Richards, Lay-
ton & Finger, Wilmington, Del., Andrew
J. Kilcarr, and Joseph E. Fortenberry, of
Donovan, Leisure, Newton & Irvine,
Washington, D. C., and John R. Staf-
ford, New York City, of counsel, for
plaintiff.

F. L. Peter Stone, U. S. Atty., and
Norman Levine, Asst. U. S. Atty., Wil-
mington, Del., John L. Murphy and
Howard Epstein, Attys. U. S. Dept. of
Justice, Washington, D. C., and William
W. Goodrich, Asst. Gen. Counsel, United
States Dept. of Health, Education and
Welfare, Washington, D. C., of counsel,
for defendants.

OPINION

LATCHUM, District Judge.

In this proceeding American Home
Products Corporation, on behalf of
its Wyeth Laboratories' division

("Wyeth"), moved for leave to file an amended complaint requesting declaratory and injunctive relief prohibiting the Commissioner of Food and Drugs ("the Commissioner") from withdrawing certification of Wycillin SM–600,[1] one of Wyeth's fixed combination antibiotic drugs.

This case was last before this Court in the summer of 1969. The manner in which this action originally arose, the narrow issue then involved and the relief afforded is set forth in American Home Products Corp. v. Finch, 303 F. Supp. 448 (D.Del.1969). Thus the historical background of this litigation need not be repeated in its full detail here.[2]

This controversy stems from the 1962 amendments to the Federal Food, Drug and Cosmetic Act ("the Act"), 21 U.S.C. § 301 et seq., which for the first time, required manufacturers of all drugs marketed in the United States to prove their products effective for the use intended.[3] At the request of the Food and Drug Administration ("FDA") extensive drug efficacy studies were undertaken between 1966 and 1968 by the National Academy of Science—National Research Council ("the "NAS/NRC") to evaluate the manufacturers' claims of effectiveness for all drugs approved for marketing after 1938. The NAS/NRC reported to the FDA in September 1968 that a number of Wyeth's fixed combination antibiotic drugs, including Wycillin SM–600, were "ineffective as fixed combinations." On April 2, 1969, the Commissioner sent a copy of the appropriate NAS/NRC report to Wyeth and caused to be published in the Federal Register (34 Fed.Reg. 6006–6007) a no-

tice of intention to amend the appropriate FDA regulations to delete certain of Wyeth's fixed combination antibiotic drugs from the list of drugs acceptable for certification pursuant to section 507 of the Act, 21 U.S.C. § 357. The notice stated that the Commissioner "concurred" in the findings of the NAS/NRC that certain of Wyeth's drugs were "ineffective" or "ineffective as fixed combinations" and that there was a lack of substantial evidence to support the efficacy claims of these combinations. The notice invited Wyeth to submit any additional "pertinent data."

On May 1, 1969, Wyeth submitted what it then believed to be "pertinent data" and requested a hearing. On June 13, 1969, the Commissioner caused orders to be published in the Federal Register (34 Fed.Reg. 9333–9338) deleting Wyeth's fixed combination antibiotic drugs from the list of drugs eligible for certification, prohibiting all further certification, and revoking previously issued certificates. The reason stated by the Commissioner for these actions was that Wyeth's May 1, 1969 submission did not contain any "new clinical data" and did not "provide substantial evidence of the effectiveness of such combination drugs." The June 13, 1969 orders provided that objections could be submitted and a hearing requested within thirty days, but that withdrawal of the products from the market had to be accomplished within forty days. The orders also required that a statement setting forth reasonable grounds for a hearing be filed and that it identify the claimed errors in the NAS/NRC evaluation and identify any adequate and well-controlled investigations from which it

---

1. Wycillin SM–600, which was first certified by the FDA as safe and effective in 1964, is given by injection and contains as its active ingredients in each 2 cc., 600,000 units of procaine penicillin G and 0.5 grams of streptomycin sulfate.

2. For further general background see Pharmaceutical Manufacturers Association v. Richardson, 318 F.Supp. 301 (D. Del.1970).

3. Antibiotic drugs containing penicillin, since 1945, streptomycin, since 1947, chlortetrocycline (formerly aureomycin), chloramphenicol and bacitracin, since 1949, have had to meet the standard of "efficacy of use", under section 507(a) of the Act, 21 U.S.C. § 357(a). However, it was not until after the 1962 amendments that the efficacy requirements challenged in this case were applied to drugs under section 507(a).

could reasonably be concluded that the fixed combination drugs would have the effectiveness claimed and would be safe for their intended use. Wyeth submitted objections on July 9, 1969, within the thirty day period, and again requested a hearing.

When the Commissioner failed or refused to rule upon Wyeth's objections and it was faced with the immediate removal of the drugs from the market, Wyeth filed this action requesting declaratory and injunctive relief. After several hearings, this Court, on August 18, 1969, enjoined the defendants from further proceeding against Wyeth's fixed combination antibiotic products until thirty days after the date the Commissioner completed action on Wyeth's objections and request for a hearing. American Home Products Corp. v. Finch, supra, 303 F.Supp. at 456–457.[4]

Following this decision, several significant developments occurred. On September 19, 1969, the Commissioner promulgated general regulations ("the September regulations") designed to facilitate the implementation of the NAS/NRC effectiveness review. 34 Fed.Reg. 14596. These regulations for the first time described in detail the kind of evidence that the FDA would deem necessary in order to meet the requirements of "substantial evidence" of effectiveness as that term was defined in section 505(d) of the Act, 21 U.S.C. § 355(d), applicable to non-antibiotic drugs, subject to section 505, and to certain antibiotic drugs, subject to section 507(h), 21 U.S.C. § 357(h). Pursuant to the authority granted under section 507(a) and (b) and delegated to him by 21 CFR § 2.120(a), the Commissioner promulgated regulations to insure the "efficacy of use" of drugs, such as Wycillin SM–600, subject to section 507(a)

of the Act, 21 U.S.C. § 357(a), by ordering that the same efficacy standards applicable to drugs subject to sections 505 and 507(h) be made applicable to drugs subject to section 507(a).[5] 34 Fed.Reg. at 14597.

The September regulations defined "substantial evidence" solely in terms of "adequate and well-controlled clinical investigations", spelled out the criteria for such investigations, and dismissed as irrelevant other clinical evidence. Further, the drug manufacturer affected was required to show reasonable grounds for a hearing by presenting studies to the FDA which fully met the criteria for adequate and well-controlled investigations of the kind set forth in the regulations. 34 Fed.Reg. at 14597.

In Pharmaceutical Manufacturers Association v. Finch, 307 F.Supp. 858 (D. Del.1970) this Court rejected the Commissioner's characterization of the September regulations as "interpretative" and, because of their pervasive and substantial impact upon the drug industry, held the September regulations invalid on the ground that, contrary to the requirements of section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, they were issued without the required notice of proposed rule making and opportunity for interested persons to comment.

In response to this decision, the Commissioner on February 17, 1970 published a notice of proposed regulations ("the February proposals") and invited comment by interested parties. 35 Fed.Reg. 3073. The February proposals were similar in material content to the September regulations.

After considering the various comments submitted by interested parties, the Commissioner on May 8, 1970, pub-

---

4. Similar relief was granted to another manufacturer of fixed combination antibiotic drugs by Chief Judge Kent in Upjohn Company v. Finch, 303 F.Supp. 241 (W.D.Mich.1969).

5. The procedure for FDA approval is different for drugs subject to the two sections. In order for a drug subject to section 505 to be marketed an FDA-approved new drug application must be in effect. Approval of a drug subject to section 507 is done by means of a batch certification procedure.

lished in the Federal Register a statement discussing and disposing of the comments, and an order setting forth the final regulations ("the May regulations"), which became effective upon publication. 35 Fed.Reg. 7250; codified in 21 CFR, parts 130 and 146. The May regulations again made the same standards of "substantial evidence" of effectiveness applicable to drugs subject to section 507(a) as were applicable to drugs subject to section 505 and section 507(h). 35 Fed.Reg. at 7253; codified as 21 CFR § 146.1(g) (1) and (2).

By delineating the scientific content necessary for "adequate and well-controlled clinical investigations", the May regulations established standards of evidence which the FDA deemed necessary in order for a manufacturer to demonstrate the effectiveness of drug products, including drugs such as Wycillin SM–600, subject to the "efficacy of use" requirement of section 507(a). See 35 Fed.Reg. at 7251–7252; codified in 21 CFR § 130.12(a) (5) (ii). The May regulations also set forth the procedural requirements for obtaining an evidentiary hearing when the Commissioner proposed to amend or repeal an antibiotic certification regulation on efficacy grounds. 35 Fed.Reg. at 7252; codified as 21 CFR § 146.1(d). The Commissioner's authority to issue the May regulations, when challenged in this Court by the Pharmaceutical Manufacturers Association, was upheld. Pharmaceutical Manufacturers Association v. Richardson, 318 F.Supp. 301 (D.Del.1970).

During the time that the Pharmaceutical Manufacturers Association litigation was proceeding in this Court, the August 18, 1969 preliminary injunction issued in this case remained in effect. The Commissioner continued to review Wyeth's objections and consider its request for a hearing with respect to its fixed combination antibiotic drugs. A change occurred during 1970, however, when Wyeth voluntarily ceased the manufacture and sale of all of its fixed combination antibiotic drugs affected by the Commissioner's June 13, 1969 orders, ex-cept Wycillin SM–600. On or about June 3, 1970 Wyeth advised the FDA that these products were no longer being produced. At the same time Wyeth withdrew all its objections to the June 13, 1969 orders, except to the extent that those objections and the request for a hearing related to Wycillin SM–600.

On June 23, 1970, the present Commissioner published in the Federal Register (35 Fed.Reg. 10211) notices confirming each of his predecessor's two June 13, 1969 orders which pertained to Wyeth. The notice of confirmation as to the penicillin-sulfonamide order (34 Fed.Reg. 9336) noted Wyeth's withdrawal of all of its objections. The penicillin-sulfonamide order became effective thirty days after publication of the confirmation. The notice with respect to the penicillin-streptomycin order (34 Fed.Reg. 9333) noted that all of Wyeth's objections, except as to Wycillin SM–600, had been withdrawn. The penicillin-streptomycin order became effective thirty days after the publication of the confirmation for all such combination drugs except Wycillin SM–600. The penicillin-streptomycin notice stated that the Commissioner would rule on the Wycillin SM–600 objections when his evaluation was completed.

On June 26, 1970, Wyeth filed with the Commissioner revisions and supplements of its July 9, 1969 objections to the orders and request for hearing. These revised objections eliminated material made superfluous by the product discontinuation and also placed in the record additional clinical studies purporting to show Wycillin SM–600's effectiveness. Included were affidavits by experts attesting to the product's effectiveness. In addition, Wyeth proposed revised labeling for Wycillin SM–600 restricting it to hospital use for a period not to exceed seven days for prophylaxis against, and treatment of, mixed surgical infections, including peritonitis.

After completing the evaluation of the medical data submitted by Wyeth, the Commissioner, on May 21, 1971, published in the Federal Register a final order

ruling adversely on Wyeth's objections and denying its request for a hearing on the continued certification of Wycillin SM–600 for restricted use under the proposed new labeling. The order was to become effective thirty days after its publication.[6] 36 Fed.Reg. 9244–9246.

While the final order of May 21, 1971 did not expressly so state, it appeared from the Commissioner's analysis of the medical documentation that the Commissioner found that Wyeth's documentation showed on its face that no reasonable grounds existed for holding an evidentiary hearing before the repeal of the certification regulations relating to Wycillin SM–600, since no adequate and well-controlled clinical investigations meeting the criteria of the May regulations had been conducted or identified. There was thus no substantial evidence establishing the effectiveness of Wycillin SM–600 for its proposed restricted use. ·

Faced with the adverse final order entered by the Commissioner on May 21, 1971, scheduled to become effective on June 21, 1971, removing Wycillin SM–600 from further certification and revoking certificates previously issued, Wyeth reactivated this case on June 14, 1971 by filing (1) a motion for continuation of the Court's jurisdiction and for leave to file an amended complaint seeking a judgment declaring the Commissioner's order of May 21, 1971 null and void and (2) a motion for an order continuing the injunction issued on August 18, 1969. The defendants opposed both motions and moved to dismiss the action.

On June 18, 1971 the motions came on for hearing on the entire record, briefs and affidavits filed by the parties, and oral arguments of counsel. At the close of the hearing the Court denied Wyeth's motions and dismissed the suit. This opinion states the reasons for the Court's actions.

Under the provisions of section 507(f) of the Act, 21 U.S.C. § 357(f), orders of the Commissioner amending or repealing regulations providing for the certification of antibiotic drugs covered by section 507 are subject to the judicial review procedures set forth in section 701(f) of the Act, 21 U.S.C. § 371(f). Section 701(f) provides in relevant part as follows:

"(f) (1) In case of actual controversy as to the validity of any order * * *, any person who will be adversely affected by such order if placed in effect may at any time prior to the ninetieth day after such order is issued file a petition with the United States court of appeal for the circuit wherein such person resides or has his principal place of business, for a judicial review of such order.

\* \* \* \* \* \*

"(6) The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law."

In urging this Court to act favorably on its motions presently before the Court, Wyeth first contended that this Court had "concurrent jurisdiction" by virtue of section 701(f) (6), to judicially review the Commissioner's final order of May 21, 1971 under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

■ Since the United States Supreme Court's opinion in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), it is clear that the existence of the "special statutory review proceeding" provided in section 701(f) does not automatically foreclose this Court, in an appropriate case, from entertaining actions for pre-enforcement judicial review under the Declaratory Judgment Act. However, whether a Court should exercise its power to grant declaratory relief is a discretionary determination which depends upon the circumstances existing at any given time. Magee-Hale Park-O-Meter Co. v. Vehicular Parking, Ltd., 180 F.2d 897, 899 (C. A. 3, 1950); General Motors Corp. v.

---

6. This was in keeping with the time limitation prescribed in the August 18, 1969 injunction issued by this Court.

Volpe, 321 F.Supp. 1112, 1122 (D.Del. 1970). The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant"; "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Public Service Commission v. Wycoff Co., 344 U.S. 237, 241, 243, 73 S.Ct. 240, 97 L.Ed. 291 (1952). Declaratory relief should be "resorted to only in the sound discretion of the Court and where the interests of justice will be advanced." Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 462, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945).

When this case was initially before the Court these principles were firmly in mind. At that time, however, it was obvious that the Commissioner, in forthwith ordering the removal of the fixed combination antibiotic drugs from the market, had done so without first making a determination of whether reasonable grounds existed for a hearing, as he was required to do by the Act. Moreover, at that time there had been no definite criteria established for determining what was meant by "adequate and well-controlled clinical investigations." Under those circumstances, this Court concluded that the Commissioner's actions in removing the drugs without first determining whether reasonable grounds for a hearing existed lacked the requirement of fundamental fairness implicit in due process.

To have refused to act within the time confines and factual situation then existing would have been inconsistent with the Court's duty to advance the interest of justice and might have amounted to an abuse of discretion. The Court enjoined the Commissioner from taking precipitous action to remove the drugs until he had completed action on Wyeth's objections and request for a hearing. The Court in its sound discretion exercised its equitable and declaratory powers to give preenforcement relief in support of the administrative process, not in derogation thereof.

In the current situation, however, the peculiar factual and legal setting which initially prompted the discretionary exercise of this Court's declaratory and equitable powers did not exist. Since this Court's order of June 18, 1969, the circumstances had changed .radically. The Commissioner in the May regulations spelled out the criteria for adequate and well-controlled clinical investigations and provided a legally valid summary procedure for determining whether an evidentiary hearing should be held. The Commissioner, purporting to apply the summary procedure provisions of the May regulations, finally determined on May 21, 1971 that the medical documentation submitted by Wyeth showed on its face that no adequate and well-controlled clinical investigation had been conducted or identified. Therefore he impliedly found that an "evidentiary" hearing would have been futile.

■ Wyeth argued that the Commissioner misapplied the May regulations and .made an erroneous finding that no reasonable grounds existed for an "evidentiary" hearing. But even if this were true, Wyeth had, without this Court's intervention, an adequate, speedy and effective remedy by appeal of the Commissioner's ruling to the appropriate Court of Appeals. As previously noted, section 701(f) (1) of the Act, 21 U.S.C. § 371(f) (1), specifically authorizes judicial review of the Commissioner's amendment or repeal of antibiotic drug certification by the Court of Appeals for the circuit wherein the party appealing resides or has his principal place of business.

Thus, the appropriate Court of Appeals, as "the [special statutory] reviewing court could determine whether the [May 8, 1970] regulations were complied with, whether the Commissioner correctly applied the rules, and whether the Commissioner's reasons for his decision were sufficiently articulated." Pharmaceutical Manufacturers Association v. Richardson, supra, 318 F.Supp. at 313.

This judicial review procedure was followed in Upjohn Company v. Finch, 422 F.2d 944 (C.A. 6, 1970) and Pfizer, Inc. v. Richardson, 434 F.2d 536 (C.A. 2, 1970) when fixed combination antibiotic drugs of other manufacturers were removed from the market by the Commissioner without an "evidentiary" hearing.

While this Court, in light of *Abbott Laboratories* and section 701(f) (6) of the Act, 21 U.S.C. § 371(f) (6), undoubtedly has the discretionary power to render declaratory judgments under 28 U.S.C. §§ 2201–2202, in spite of section 701(f) (1) of the Act, 21 U.S.C. § 371(f) (1), and though Rule 57, F.R. Civ.P., permits declaratory relief even when another adequate remedy exists, it is established law that declaratory judgment relief should not be granted in the *normal* case when a special statutory review proceeding has been provided. Katzenbach v. McClung, 379 U.S. 294, 296, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). This was especially true under the present circumstances since the special statutory review procedure was as speedy, effective and as well suited to Wyeth's needs as declaratory relief in this Court.[7] Thus, the Court concluded that its discretionary power to grant declaratory relief should be withheld and this Court should defer to the special statutory judicial review proceedings provided by section 701(f) (1) of the Act, 21 U.S.C. § 371(f) (1), as was done in the *Upjohn* and *Pfizer* cases.

Simply stated, it was the view of this Court that Wyeth failed to make as sufficiently strong a showing, as it did originally, to move this court in the exercise of its discretion, to grant the alternative declaratory relief sought. For this Court to have acted in the present circumstances, after the Commissioner had purportedly proceeded in accordance with the Act and the May regulations, would have amounted to an unnecessary interference with the special statutory appeal procedure contemplated by Congress as the normal method of judicial review of final FDA action.

The Court further concluded that it was unnecessary to grant equitable relief by continuing the August 18, 1969 injunction. The attorney for the defendants at the hearing stipulated that the Commissioner's order of May 21, 1971 de-certifying Wycillin SM–600 would not be enforced until after Wyeth had an opportunity to present a motion for a stay to the Court of Appeals in which the plaintiff intended to seek judicial review of the Commissioner's order. In view of this stipulation the Court was of the opinion that no immediate and irreparable injury to Wyeth was imminent. Indeed, the Court noted that, either by agreement of the Commissioner or by order of the Court of Appeals, stays in both the *Upjohn* and *Pfizer* cases were easily obtained pending the determination of the merits of the appeals.

Accordingly, an order was entered on June 18, 1971 in accordance with this opinion for the reasons herein set forth.

---

7. Declaratory relief was also found to be inappropriate under section 10(b) of the Administrative Procedure Act, 5 U.S.C. § 703. That section requires judicial review of final agency action to be by "the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments. * * *" Since section 701(f) (1) of the Act, 21 U.S.C. § 371(f) (1), establishes a special statutory review procedure, with appeal to an appropriate Court of Appeals for review of final FDA action, and since this Court found that such a review procedure was adequate under the existing circumstances, no obligation arose for this Court to grant declaratory relief under section 10(b) of the Administrative Procedure Act.