345 So.2d 67 (1976)
DIVISION OF ADMINISTRATION
v.
DEPARTMENT OF CIVIL SERVICE, State of Louisiana and the Civil Service Commission, State of Louisiana.
No. 11059.
Court of Appeal of Louisiana, First Circuit.
August 13, 1976.
Rehearing Denied March 21, 1977.
*68 Phil E. Miley, Baton Rouge, La., for Division of Administration.
R. Gray Sexton, Baton Rouge, La., for appellee.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
The Division of Administration, Office of the Governor, through its Director, the Honorable Charles E. Roemer, (Applicant), invokes the supervisory jurisdiction of this court to stay an order of the Civil Service Commission, State of Louisiana, (Respondent), directing Applicant to bring into the classified service of the state (Civil Service) all employees of the Division of Administration other than the two (2) unclassified positions permitted by Article 10, Section 7, La.Const. of 1974. We grant the requested stay order.
Pursuant to its claimed authority, the Civil Service Commission, State of Louisiana, (Commission), instituted hearings to determine the civil service status of certain employees of the Division of Administration. On July 8, 1976, the Commission rendered an opinion decreeing that all employees of the Division of Administration, save the Commissioner and two employees, be brought into the Civil Service System, within forty-five days, in compliance with the Commission's rules and regulations. Applicant timely appealed. This application was filed August 5, 1976. The Commission's order becomes effective August 22, 1976.
Rule XVI, Section 6, Uniform Rules, Courts of Appeal, permits the Appellate Courts to stay a Commission ruling pending appeal. The sole issue before us at this time is whether the requested stay order should be issued pending the outcome of this controversy on appeal.
Due to the lack of controlling authority in our own jurisprudence pertaining to a stay of an Administrative order, both Applicant and Respondent cite and rely upon the often cited authority of Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), which sets forth what the Federal Jurisprudence has characterized as "traditional standards" applicable in cases of this nature. See Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed. 166; Eastern Air Lines v. Civil Aeronautics Board, 261 F.2d 830 (2d Cir. 1958); Associated Securities Corp. v. SEC, 283 F.2d 773 (10th Cir. 1960); Schwartz v. Covington, 341 F.2d 537 (9th Cir. 1965); American Home Products Corporation v. Finch, 303 F.Supp. 448 (Dist.Del. 1969).
Virginia Petroleum Jobbers Association, above, involved an attempt to enjoin enforcement of an order of the Federal Power Commission rendered after administrative hearings. The court denied the application for the requested stay order, noting that the granting or denial of the requested relief must be determined in the light of the following applicable rule:
"We come, then, to a consideration of whether petitioner has shown sufficient grounds warranting the exercise of the court's powers to grant the extraordinary relief requested. Essentially, four factors influence our decision:
(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the *69 court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. But injury held insufficient to justify a stay in one case may well be sufficient to justify it in another, where the applicant has demonstrated a higher probability of success on the merits. (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? On this side of the coin, we must determine whether, despite showings of probable success and irreparable injury on the part of petitioner, the issuance of a stay would have a serious adverse effect on other interested persons. Relief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents. (4) Where lies the public interest? In litigation involving the administration of regulatory statutes designed to promote the public interest, this factor necessarily becomes crucial. The interests of private litigants must give way to the realization of public purposes. The public interest may, of course, have many facesfavoring at once both the rapid expansion of utilities and the prevention of wasteful and repetitive proceedings at the taxpayers' or consumers' expense; both fostering competition and preserving the economic viability of existing public services; both expediting administrative or judicial action and preserving orderly procedure. We must determine, these many facets considered, how the court's action serves the public best." (Emphasis in original).
It also appears that Federal Jurisprudence has adopted the rule that in matters of this nature much discretion is vested in the Appellate Court. In Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229, the question of granting a stay order to a party seeking judicial review of an F.C.C. order was before the Court. In affirming the Court of Appeal's certificate on the stay order, the Supreme Court stated:
"A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant (cases cited). It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case."
See also 73 C.J.S. Public Administrative Bodies and Procedure, § 180, pages 526-527.
We deem both of the cited rules to be logical and founded upon reasonable principles. In the absence of jurisprudence of our own on the subject matter, we adopt these rules and apply them herein.
Considering the likelihood of Applicant prevailing upon appeal, we note that Applicant raises a serious issue predicated upon Article 10, Section 2(B), La. Constitution of 1974, which provides that the unclassified state and city civil service systems shall include:
"10. employees, deputies, and officers of the legislature and of the offices of the governor, lieutenant governor, attorney general . . .."
Article 10, Section 2(B)(2), above, provides that the unclassified systems shall include the heads of each principal executive department appointed by the Governor. Article 10, Section 2(B)(7), above, states that the unclassified systems shall further include one person holding a confidential position and one principal assistant or deputy to any officer named in Section 2(B)(2), above.
LSA-R.S. 39:1 currently provides that the Division of Administration is created as a division of the office of the Governor.
Simply stated, Applicant's position is that the Division of Administration being legislatively *70 created as a division or department of the office of the Governor, all employees of the division are employees of the Governor's office. Consequently all such employees are included in the unclassified service as defined in Article 10, Section 2(B)(10), above.
Conversely, Respondent urges that Subsections (2) and (7) of Article 10, Section 2(B), above, are applicable and that only the head of the Division of Administration and two other assistants or deputies fall within the unclassified category.
We are not herein called upon to decide the merits of the controversy. We find it suffices that Applicant's position presents a serious legal question for resolution. Because the criterion under discussion is not solely dispositive of Applicant's right to a stay order, we conclude Applicant has satisfied this condition.
Concerning the issue of irreparable injury, Applicant notes that the Governor, among other duties, is constitutionally required to furnish the legislature with reports, at the beginning of regular sessions, containing recommendations and information concerning the affairs of the state, particularly a complete report of the state's financial condition. La. Constitution of 1974, Article 4, Section 5(B). Applicant also points out the obligation of the Governor to submit an operating budget and a capital outlay budget to the legislature pursuant to Article 4, Section 5(D), La. Constitution of 1974. According to Applicant, the employees sought to be classified fall into numerous positions of expertise, especially those dealing with budget preparation. If classified, the future of these positions will be rendered uncertain in that they will be open to classified personnel. Applicant suggests that classifying these positions will result in lower salaries being fixed pursuant to civil service rules, thus resulting in a loss of expert and experienced personnel to the detriment of the state. Moreover, according to Applicant, those employees choosing to remain as classified employees will be subjected to the requirement of taking qualifying examinations to remain in state service. This circumstance, it is argued, will unquestionably affect the morale and efficiency of the employees in question at a time when their undivided attention is required for the performance of their specialized duties. It is also contended that capable replacements for those employees who leave the Division of Administration under the circumstances, may not be available at civil service salary schedules, thus jeopardizing the efficiency of the division.
Applicant also notes that if the requested stay is not granted and the Commission's order is reversed on appeal, the function of the Division will be twice disrupted in that the affected employees will be immediately placed in the classified service and subsequently removed therefrom.
Respondent contends, however, that should the order be reversed, employees lost as a result of failure to grant the stay order could be reinstated with back pay and restoration of all benefits, and that with Respondent's assistance all delays could be avoided. In opposition, Respondent also contends that there is no proof that the state service is more efficiently served by the employment of unclassified personnel. Respondent notes that the Commission can provide qualified personnel by establishing both job requirements for the positions in question and tests designed to insure selection of individuals possessing the requisite capabilities.
As stated in Virginia Petroleum, above, injuries, however substantial in terms of money, time, and energy, do not fulfill the requirement of irreparable injury. The possibility that adequate compensatory or other corrective relief will be available in the future, weighs heavily against a claim of irreparable harm.
We are concerned with approximately 30 positions in an agency which, by law, is designated as a division or department of the office of the Governor. While the monetary loss or inconvenience to the personnel concerned may be adequately compensated for in the event of our refusal to grant the stay order, nevertheless the disruption of a vital state service which will most probably *71 ensue upon our refusal to stay, is a matter that cannot be measured in monetary terms. In this regard we judicially note that the legislature is presently in special session. We also note media announcements of an impending second special session, possibly in October, 1976. These circumstances place extra stress and obligations on the office of the Governor and the Division of Administration. To disrupt the normal function of the office of the Governor and the Division of Administration at this time could cause incalculable harm to a vital state service. In the exercise of our discretion, we are not disposed to achieve such a result.
Despite the contention of the Commission that its image will be tarnished and its integrity held suspect if its order is not immediately implemented, we see no possibility of harm to the Commission resulting from our staying its decree. The record adequately reflects that the Commission has long pursued the matter in question. Classification of the employees in question has been a bone of contention between the Commission and the Division of Administration over a period of many years. The Commission has been most diligent in pressing its claim that the employees in question are classified employees. We recognize and declare the Commission's right to pursue this attempt at classification on the Commission's own initiative. Such action is entirely compatible with the letter of the Civil Service Article of the Constitution. La. Constitution of 1974, Article 10, Section 10(B).
Rather than reflecting adversely upon the integrity of the Commission, we find the Commission has acquitted itself nobly in undertaking this litigation. In so doing the Commission has again displayed the commendable characteristic of independence and the keen desire to zealously discharge the constitutional duty imposed upon it, irrespective of what governmental agency is involved.
In deciding where the public interest lies herein, we are mindful that the instant case is somewhat unusual on its facts in that we are concerned with a situation in which the administrative order sought to be stayed has a direct effect upon another governmental unit. This fact, we believe, is an additional circumstance to be given considerable weight in resolving this present controversy. We readily concede it greatly influenced the exercise of our discretion in this matter.
We find no basis for concluding the interest of the Commission will be substantially harmed by granting the requested order. There is no reason to believe that if the Commission's decree is sustained on appeal of the merits, the Division of Administration will decline to comply. We find the record supports Applicant's position that it is in the public interest to maintain the status quo pending appeal. As contended by Applicant, the procedural problems attending the ordered reorganization will be held to the greatest possible minimum in that there will be only one reorganization if the Commission's order is set aside and no reorganization should Applicant prevail on appeal. Any reorganization necessarily results in impairment of departmental functioning, irrespective of the time and manner of its accomplishment. A reorganization which casts doubt and uncertainty upon the job future of the personnel concerned can be even more disruptive than a reorganization posing no such threat. In this regard, we again note that the legislature is presently in special session with another special session in the offing.
It is ordered, adjudged and decreed that enforcement of the order of the Civil Service Commission rendered herein, be and the same is hereby stayed pending disposition of the appeal of this matter on the merits. It is further ordered, adjudged and decreed that the Civil Service Commission be cast for all costs for which it is liable by law.
Writ granted, stay order issued.