303 So.2d 728 (1974)
EMPLOYERS-COMMERCIAL UNION INSURANCE COMPANY et al.
v.
Honorable Sherman A. BERNARD, Commissioner of Insurance of the State of Louisiana.
No. 54327.
Supreme Court of Louisiana.
July 1, 1974.
Rehearing Denied August 30, 1974.
*729 Raymond C. Vinet, Sr., Mary Robinson, Baton Rouge, Elward Wright, Houma, Hugh Oliver, Westwego, for defendant-applicant.
George R. Blue, Beard, Blue, Schmitt & Treen, New Orleans, E. Leland Richardson, Dale, Owen, Richardson, Taylor, & Mathews, John S. White, Jr., Kennon, White & Odom, Baton Rouge, for plaintiffs-respondents.
Robert J. Vandaworker, Taylor, Porter, Brooks & Phillips, Baton Rouge, for intervenor-respondent.
DIXON, Justice.
In this action insurance companies writing policies insuring against physical damage to vehicles sought a "declaratory judgment" and a "stay order" against Sherman A. Bernard, Commissioner of Insurance of Louisiana.
Plaintiffs and intervenors sought a judgment declaring (1) that the Administrative Procedure Act (R.S. 49:951-49:966) applies to the defendant, and that he should comply before holding a hearing; (2) that the power to regulate insurance rates is exclusively within the power and authority of the Louisiana Insurance Rating Commission; and (3) that the commissioner has no power to issue orders to insurance companies to "cease and desist from the violation of the unfair trade practices... In that you are charging rates for physical damage insurance that produced profits in the State of Louisiana for the year 1971 in excess of ..." from 22% to 32% of premiums. Plaintiffs and intervenors further prayed that defendant be prohibited from exercising any jurisdiction over them when the only violation claimed was charging rates already filed with the rating commission and which had become effective.
In a comprehensive written opinion the trial court overruled defendant's exceptions, found the commissioner to be covered by the Administrative Procedure Act and ordered him to comply with R.S. 49:962 and 49:952(2), but denied the other relief sought by plaintiffs, permitting the commissioner to hold the hearings upon compliance.
Plaintiffs and intervenors appealed. Pending the appeal, one intervenor effected a compromise with the commissioner and obtained a dismissal upon the showing that it had filed reductions in rates totaling 20.9%.
The Court of Appeal ruled against the commissioner, noting that the trial court judgment ordering compliance with the Administrative Procedure Act had become final since defendant had not appealed, and otherwise reversing the trial court, holding that regulation of premium rates is within the exclusive jurisdiction of the Louisiana Insurance Rating Commission, and that the commissioner's hearings "must be limited to unfair trade practices as specified in or reasonably determined to be *730 within the purview and intent of L.R.S. 22:1214." (Employers-Commercial Union Insurance Co. v. Bernard, Commissioner of Insurance, 286 So.2d 445). We granted writs on the application of the commissioner.
The Court of Appeal quoted extensively from the opinion of the trial judge, but reached the opposite conclusion, finding that "it was the clear intent of the legislature to vest rate regulation in the Louisiana Insurance Rating Commission," and that the commissioner's hearing and investigation into insurers' excessive profits amounted to an attempt to regulate rates, which is within the exclusive jurisdiction of the Louisiana Insurance Rating Commission.
The logical extension of such rationale is to hold that the commissioner can hold no hearings that will affect rate structure, unless specifically authorized by statute.
In 1926, by Act 302, the Louisiana Insurance Commission was created, with the power to fix equitable rates. In 1936 ratefixing powers were vested in the newly created Louisiana Casualty and Surety Rating Commission. Act 44 of 1936. In 1946 the Louisiana Inland Marine Rating Commission was established. Act 205 of 1946. The Insurance Code of 1948 (Act 195 of 1948) became, in the main, Title 22 of the Louisiana Revised Statutes of 1950, a title which was reenacted by the legislature in Act 125 of 1958, the current insurance code.
As a new section in 1948, the Louisiana Insurance Rating Commission was created as a seven man board appointed by the Governor, plus the Commissioner of Insurance. Later amendments fixed the number at six members, plus the commissioner. R. S. 22:1401. Still further amendments resulted in the reenactment, additions and changes to R.S. 22:1401-22:1422, which, with R.S. 22:1431-22:1446 constitute Part XXX of the insurance code.
A most significant change in this legislation relevant to the issues before us is the elimination of a portion of Section 6 of Act 44 of 1936, which provided for a mandatory hearing by the commission on a citizen's complaint that rates are excessive:
"The Commission may, upon his own motion, but must upon written complaint of a citizen that rates on any class or classes of risks in this State are excessive or that unjust discrimination in rates exists in the same classification between risks in the application of like charges or credits, or discrimination between risks of essentially the same hazard, order a hearing for the purpose of determining such questions of excessive rates and discrimination, but the review of such questions and the rates complained of before the said Commission shall be had only after fifteen days' notice to all parties interested, and if upon such hearing the Commission shall determine that the rates complained of are excessive or that they are unfairly discriminatory, they shall order the excessive or unfair discrimination removed and a rate substituted which is not excessive or discriminatory."
The current law only permits the commission to conduct a hearing at the instance of "any person ... aggrieved with respect to any filing which is in effect" to determine whether the filing "meets the requirements of this Part ..." R.S. 22:1408, subd. D. Section 1412 of Title 22 requires rating organizations or insurers which fix their own rates to furnish to an insured "all pertinent information as to such rate" on payment of a reasonable charge.
Until 1956 the Secretary of State was the ex-officio insurance commissioner of Louisiana. See La.Const. 1913, Art. 82; La. Const.1921, Art. 5, § 20. The 1921 Constitution reserved to the legislature the power to create a separate office, which was exercised in 1956 by Act 200. The 1958 reenactment of the insurance code substituted "Commissioner of Insurance" for "Secretary of State" in the code. The duties of the insurance commissioner had obviously become so important and taxing *731 that they were separated from the Secretary of State and delegated to a state-wide elected commissioner of insurance.
R.S. 22:2 states that the purpose of the insurance code is to regulate the business of insurance "in all its phases," and provided that it is the duty of the commissioner to "administer the provisions of this code." The next section, R.S. 22:3, provided that "No person shall transact a business of insurance ... without complying with the provisions of this Code." Excessive rates are prohibited in R.S. 22:1404(2):
"Rates shall not be excessive, inadequate or unfairly discriminatory."
R.S. 22:1402 declares as policy that rates shall not be excessive.
The commissioner contends that he is acting under the authority of his office, and particularly R.S. 22:1215, 22:1216 and 22:1217:
"The commissioner of insurance shall have power to examine and investigate into the affairs of every person engaged in the business of insurance in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this Part."
"If the commissioner of insurance shall have reason to believe that any person is engaging in this state in any unfair method of competition or in any unfair or deceptive act or practice in the conduct of an insurance business, as enumerated in R.S., 22:1214, and that a proceeding by him in respect thereto would be to the interest of the public, he shall issue and serve upon such person a statement of the charges and a notice of a hearing thereon to be held in accordance with Part XXIX." (Emphasis added).
"A. If after hearing, the commissioner of insurance shall determine that the provisions of this Part have been violated, he shall have authority to and shall issue an order requiring such person or insurer to cease and desist from such method, act or practice, and shall make written record of his findings.
"B. The commissioner may seek the enforcement of such order by civil legal action to be filed in the District Court for the Parish of East Baton Rouge.
Any person who violates a cease and desist order of the commissioner after it has become final, and while such order is in effect, shall upon proof thereof to the satisfaction of the court, forfeit and pay to the State of Louisiana a sum not to exceed $500.00 except that, if such violation is found to be willful, the amount of such penalty shall be a sum not to exceed $5000.00."
The unfair practices mentioned in R.S. 22:1215 refer to R.S. 22:1214, the definition section in the Louisiana Unfair Trade Practices Act. R.S. 22:1214(12) (as did subsection 10 of Section 26.04 of Act 195 of 1948, the first insurance code) defines as an unfair practice, among others: "Any violation of any prohibitory law of this state."
Under the first insurance code, the Secretary of State was authorized to investigate and directed to hold hearing on charges of violation of the Unfair Trade Practices Act. Act 195 of 1948, §§ 26.05, 26.06. These powers and duties were transferred to the commissioner when the office of commissioner of insurance was created.
Charging premium rates which result in excessive profits is not specifically listed as an unfair trade practice. Rate regulation policy is, however, spelled out in R.S. 22:1402:
"The purpose of this Part is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory, *732 and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of this Part. Nothing in this Part is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit or encourage, except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. This Part shall be liberally interpreted to carry into effect the provisions of this Section." (Emphasis added).
The policy of the State, then, in regulating insurance rates is to establish rates that are neither excessive nor inadequate, to encourage cooperation in rate making, while at the same time permitting reasonable competition, and neither prohibiting nor encouraging rate uniformity.
Excessive rates, then, are prohibited specifically and generally. The fact that the filings of the individual insurer or the authorized rating organization have not been disapproved does not mean such rates are unchangeable, and deviations are permitted upon proper showing. R.S. 22:1410. It would be unreasonable to argue that rates which produce unusual, extraordinary or excessive profits are not excessive rates.
It is likewise not reasonable to argue that charging excessive rates is not violative of a prohibitory law. Excessive rates are forbidden. R.S. 22:1404(2). "Forbid" and "prohibited" are synonymous, but "prohibit implies more generality and impersonality and suggests statutes or ordinances;..." Merriam-Webster's Seventh New Collegiate Dictionary, verbo forbid.
Therefore, unless some other statutory provision inhibits the power of the commissioner, he does have the authority to investigate, hold hearings and prohibit charging excessive rates.
The position of the insurers is summarized as follows:
(1) The hearing ordered by the commissioner subjects rates to a dual scrutiny.
(2) The legislatively established rate regulation system vested the Louisiana Insurance Rating Commission with exclusive power and authority.
(3) The commissioner cannot order companies to cease and desist from charging rates legally filed and not disapproved by the commission.
However, an examination of the insurance code discloses that rates may be subjected to unlimited scrutiny. If excessive rates are prohibited, and they are, the commissioner is obligated to investigate. R.S. 22:1214-22:1217, 22:1404(2). In addition, R.S. 22:1407, subd. A(2)(d) provides that all filings and "all information pertaining thereto" are open to public inspection. Although the statutes fix effective dates of rate filings, there is no provision in the insurance code assuring a company that its rates duly filed and not disapproved shall be effective for any particular duration. On the contrary, there are several provisions for changes in rates filed.
The second position of the insurers that the rate-making function is vested exclusively with the commissionis nurtured only by repetition. The insurance code must be considered as a whole. Nothing in the code uses the word "exclusive," or any synonym, with reference to the commission. Rate filings are made with the rating commission, and that commission, composed of appointed members paid a per diem stipend plus expenses, with the commissioner as its chairman, may disapprove filings within a certain period, and may hold hearings with respect to effective filings upon a proper showing.
Nothing in the act, however, indicates that the powers of the commissioner are circumscribed and limited to functions *733 which do not affect rates. Rates are the function and concern of both the commission and the commissioner.
The third position of the insurers assumes that rates legally filed and not disapproved are entitled to some permanence or duration. This is not the scheme of the act. Rate filings may be disapproved or found ineffective at any time. Different procedures and safeguards are fixed, depending on the time of the disapproval or examination. R.S. 22:1408. The fact that a rate filing was not disapproved by the commission within the applicable waiting period does not prevent subsequent examination by the commission, and likewise does not remove the rate structure from appropriate examination by the commissioner.
For these reasons, the judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated, rejecting the demands of the plaintiffs and intervenors, at their cost.
SUMMERS, J., concurs in the result and assigns reasons.
SANDERS, C. J., and BARHAM, J., dissent and assign reasons.
SUMMERS, Justice (concurring).
If the majority opinion stands for that proposition, I do not agree that the Commissioner of Insurance has the right, power or authority to fix insurance rates in any respect; nor do I believe that he has the right or authority to reduce or change rates which the Insurance Rating Commission has fixed. I am convinced, however, that the Commissioner does have the authority to hold hearings, investigate and determine whether "unfair trade practices" have been resorted to by the Insurance Rating Commission or others in the filing of rates.
When it is found by the Commissioner that "unfair trade practices" have been resorted to in the fixing of rates, "he shall have authority to and shall issue an order requiring such person or insurer to cease and desist from such method, act or practice, and shall make written record of his findings." This order may be enforced by civil legal action, and violations are punishable as prescribed by law. La.R.S. 22:1214, 22:1215, 22:1216, 22:1217, 22:1402, 22:1404.
I respectfully concur in the holding that the Commissioner is authorized and empowered to hold the hearing in question for the purposes I have stated.
SANDERS, Chief Justice (dissenting).
The majority, in my opinion, has misinterpreted the Insurance Code, with the bizarre result that two administrative agencies are given the authority to regulate insurance rates in Louisiana.
The majority holds that the Commissioner of Insurance, as well as the Louisiana Insurance Rating Commission, has "the authority to investigate, hold hearings and prohibit charging excessive rates."
I find no provision of the Insurance Code authorizing the Commissioner to fix insurance rates. On the contrary, Part XXX of the Code clearly assigns this duty to the Louisiana Insurance Rating Commission.
LSA-R.S. 22:1401-22:1402 establishes the Louisiana Insurance Rating Commission, composed of six members, and assigns to it the duty of rate regulation.
LSA-R.S. 22:1403 defines the scope of rate regulation.
LSA-R.S. 22:1404 sets up general standards for rate making.
LSA-R.S. 22:1406 requires insurance companies to adhere to rates approved by *734 the Louisiana Insurance Rating Commission.[1]
LSA-R.S. 22:1407(A)(1) requires that insurers file their rates with the Louisiana Insurance Rating Commission.
Finally, LSA-R.S. 22:1408(C) provides for rate hearings before the Louisiana Insurance Rating Commission.
The majority bases its holding upon the authority of the Commissioner of Insurance to investigate unfair trade practices. LSA-R.S. 22:1216 authorizes the Commissioner to investigate "any unfair method of competition or ... any unfair or deceptive act or practice in the conduct of an insurance business, as enumerated in R.S. 22:1214."
LSA-R.S. 22:1214 lists as an unfair trade practice any violation of a prohibitory law. The majority points to LSA-R.S. 22:1404(2) as a prohibitory law:
"Rates shall not be excessive, inadequate or unfairly discriminatory."
The majority reasons that if an insurance company makes excessive profit under a rate fixed in accordance with the Insurance Code, the excessive return is a violation of a prohibitory law and an unfair trade practice subject to a Cease and Desist order from the Commissioner. I think not. LSA-R.S. 22:1404 does no more than set forth the general principles of rate making for the guidance of the Louisiana Insurance Rating Commission and subject insurers. In my opinion, the receipt of premiums fixed in conformity to the Louisiana Insurance Code is not an unfair method of competition or deceptive practice.
I would affirm the judgment of the Court of Appeal, though I would make clear that the Commissioner of Insurance has the authority to investigate unfair trade practices.
For the reasons assigned, I respecftully dissent.
BARHAM, Justice (dissenting).
I respectfully dissent for the reasons assigned by Mr. Chief Justice Sanders.
NOTES
[1] LSA-R.S. 22:1406 refers to the Casualty and Surety Insurance Division. However, LSA-R.S. 22:1401(F)(G) provides that the Louisiana Insurance Rating Commission succeeds to all the authority previously vested in that division.