428 So.2d 1121 (1983)
Beverly Miller SUMMERS, et al.
v.
R.T. SUTTON, Commissioner of Conservation, et al.
No. 82 CA 0450.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
*1123 Frank W. Summers, Abbeville, for plaintiffs-appellants, Beverly Miller Summers, et al.
Robert T. Jorden, Kerry T. Massari, Lafayette, for defendant-appellee, Inexco Oil Co.
D.D. Howard, New Orleans, for defendant-appellee, Broussard Land Co.
Veil David DeVillier, Eunice, for defendant-appellee, R.T. Sutton, Com'r of Conservation, State of La.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is a suit by Beverly Miller Summers, Frank W. Summers, II, Preston M. Summers, Susan P. Summers, Clay James Summers, William C. Summers, Beverly Marie Summers, Lottie Lucia Miller Massie, Charles W. Massie, III, and Laura Lucia Massie (Summers group), the lessors in an oil, gas and mineral lease dated October 14, 1977, in favor of Inexco Oil Company (Inexco), lessee, affecting certain immovable property situated in Sections 21 and 22, Township 14 South, Range 2 East, Vermilion Parish, Louisiana. The suit was brought under the Administrative Procedure Act[1] for judicial review of an administrative order issued by the Commissioner of Conservation, R.T. Sutton, which revised the boundaries and reduced the size of the drilling and production unit for the exploration for and production of gas and condensate from the Db-3 Sand, Reservoir A, in the Forked Island Field.
The plaintiffs claim that the Commissioner's order No. 1054-A-1 is invalid because of its adverse effect upon them in reducing the unit acreage from 231.07 acres to 161.04 acres in the revised unit, which unlawfully reduced their participation in production from the unit well, Inexco Oil CompanyM M Summers # 3 well (M M Summers # 3) from 71.25546 percent to 58.75559 percent.
The suit was initiated against R.T. Sutton, the Commissioner of Conservation; Inexco Oil Company, the operator of the unit and proponent of the revised unit; and Broussard Land Company, Inc., another lessor of Inexco which is participating in the unit.
From a trial court judgment affirming the Commissioner's order creating the revised unit, the plaintiffs have brought this appeal. We affirm.

*1124 THE FACTS
The controversy arises out of the following set of facts: Inexco drilled a well, M M Summers # 3, to the Db-3 Sand, Reservoir A,[2] which was productive of oil and gas in paying quantities.
Thereafter, upon application of Inexco, the Commissioner conducted a public hearing on January 7, 1981, which resulted in the issuance of Commissioner's order No. 1054-A, dated February 4, 1981, creating a 231.07 acre production unit.
Subsequent to the creation of the production unit, Inexco drilled the Inexco-Massie Miller Summers # 5 well (M M Summers # 5) within the confines of the unit. When the # 5 well reached a depth of 13,680 feet, Inexco lost it and had to abandon it on April 29, 1981. Inexco, based on findings from its experts' interpretation of the available geological and engineering data, concluded that the Db-3 Sand had shaled out in this area of the unit. With these findings, Inexco applied to the Commissioner for a public hearing to consider its application to dissolve the unit which had been established for the Db-3 Sand, and simultaneously therewith, to create a revised unit.
At the public hearing held on September 2, 1981, Inexco presented its position that the additional evidence obtained through the drilling of M M Summers # 5 showed that the unitized sand shaled out under the northern 70 acres of the unit and that this area should be excluded from the unit as nonproductive. The appellants opposed the revision, basically taking the position that the entire acreage in the unit was commercially productive, so that the unit should remain unchanged. As an alternative, the appellants presented a counterplan suggesting only a 30 acre reduction instead of the larger reduction proposed by Inexco. Experts in the fields of petroleum geology and petroleum engineering testified in support of the proponents' and the opponents' positions respectively.
Following the presentation of evidence, the case was submitted to the Commissioner. On October 5, 1981, the Commissioner issued order No. 1054-A-1, dissolving the unit and approving the revised unit proposal of Inexco as the unit for the exploration for and production of gas and condensate from the Db-3 Sand, Reservoir A, in the Forked Island Field.[3]
Appellants objected to the revised unit order, and on November 3, 1981, they petitioned the district court for judicial review, seeking a stay of execution of the order pending the litigation, and in due course, reversal or modification of the order. The case was heard on the Office of Conservation record, submitted on briefs and on oral argument. Neither party presented additional evidence to the trial court.

TRIAL COURT'S FINDINGS
In written reasons for judgment, the trial court found that: (1) the plaintiffs did not establish that they were entitled to a stay of the enforcement of the administrative order pending the litigation; (2) the plaintiffs were furnished with the complete record of the administrative hearings; (3) the agency officials were in attendance at the public hearing and participated therein; (4) the administrative hearing was a public, not an ex parte, hearing; (5) the Commissioner's "findings", including the exhibit made a part thereof, constituted the necessary findings required by law; (6) the record contained substantial evidence to support the Commissioner's factual findings; (7) it was not manifest error for the Commissioner to accept the proponents' experts' interpretation of the technical evidence that the well in question had shaled out; (8) based on the evidence of the shaling out, it was not arbitrary or capricious for the Commissioner to revise the unit so as to exclude certain nonproductive acreage therefrom; (9) the standard of the burden of proof that the proponents of the revised unit were *1125 required to meet at the administrative hearing was by "a preponderance of the evidence"; and (10) Inexco established that the well in question had shaled out.

SPECIFICATIONS OF ERRORS
On appeal the appellants in their Specifications of Errors assert that the trial court erred in the following respects: (1) in failing to grant them the stay of execution of the administrative order pending the final determination of the litigation; (2) in failing to require that they be furnished with the complete record of the administrative hearing; (3) in not finding that the Commissioner had not followed the procedures of the Administrative Procedure Act; (4) in failing to require the agency to hold Inexco to the burden of proving with reasonable certainty that the proposed revision unit was necessary; (5) in failing to find that the Commissioner's order did not include findings of fact, accompanied by an express statement of supporting facts; (6) in failing to find that the Commissioner's order was arbitrary and capricious; (7) in failing to find that the Commissioner's order was manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record; (8) in finding that Inexco had established that the Db-3 Sand in M M Summers # 5 had shaled out; and (9) in affirming the administrative order in question. Some of the specifications of error were grouped for the purpose of argument to this Court on appeal because of the inter-relationship of the alleged errors.

STAY ORDER
First, appellants argue that the trial court should have granted them a stay of the enforcement of the Commissioner's revised order so that the status quo could have been maintained until the administrative decision could be judicially reviewed. The filing of the petition in the district court seeking judicial review of an administrative adjudication does not of itself stay enforcement of the administrative order. Such a stay is not a matter of right. LSA-R.S. 49:964C provides that the granting of a stay order is discretionary with the court.
The application for a stay order is to be determined by the court in the exercise of its discretion in light of the guidelines set forth in Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), and adopted in the case of Division of Admin. v. Dept. of Civil Service, 345 So.2d 67 (La.App. 1st Cir.1976). According to these guidelines, four factors should be considered by the court in determining whether or not adequate grounds exist for the granting of a stay order:
(1) Has the petitioner made a strong showing that he is likely to prevail on the merits?
(2) Has the petitioner shown that without such relief, he will sustain irreparable injury?
(3) Would the issuance of the stay order substantially harm other parties interested in the proceedings?
(4) Where does the public interest lie?
The record does not reflect that the Summers group was likely to prevail on the merits. To have done so, it would have had to clearly show at the outset that it had presented evidence to the administrative agency that the particular sand had not shaled out. This it could not do because its own counterplan showed some shaling out and because of its recommendation that some acreage be excluded from the existing production unit. Without a strong indication of probable success, there can be no basis for the court's intrusion into the ordinary process of judicial review.
Further, there is no evidence that the Summers group would be irreparably injured by allowing the litigation to run its normal course. It appears that adequate compensatory or other corrective relief would be available to the plaintiffs in the event the courts did conclude that the administrative agency had erred in its order. In the ordinary course of litigation the possibility that adequate compensatory or other corrective relief will be available to later remedy the situation weighs heavily against *1126 a claim of irreparable injury. Division of Admin. v. Dept. of Civil Service, supra.
The factor that we find most influencing is the one involving substantial harm to other interested parties if a stay order is issued. The record reflects that if the enforcement of the administrative order were stayed, there is a strong possibility that the entire operation of the unit could be adversely affected or even shut down. If the stay order were granted and the parties were required to return to operating the unit under the original order and then on the merits the court decided in favor of the revised order, the functioning of the unit would be at least twice disrupted without any benefit to any of the parties.
It is clear where the public interest lies. It is in the public interest to maintain the original order in effect pending judicial review; it is in the best interest of the public that the exploration and production of oil and gas continue in an orderly manner under the supervision of the Office of Conservation pending the litigation. We believe that a stay of the Commissioner's revised order under the circumstances of this case would unnecessarily interfere with the orderly administration of the Office of Conservation. We feel that any benefit to the individual lessors in the instant case is greatly outweighed by the strong public policy in favor of the orderly and efficient exploration for and production of this state's vital natural resources.
We note that the Commissioner had, of course, already completed the administrative hearings and that the plaintiffs fully participated in them. Their position was clearly and forcefully presented to the Commissioner (as it has been in the judicial proceedings). A stay at this juncture would accomplish little or nothing on their behalf; it certainly would in no way expedite a resolution of the issues submitted for judicial review. In fact, such a stay at this juncture of the litigation would in all probability delay a decision on the merits, since the appellees, most assuredly, would seek a writ of review to the State Supreme Court, coupled with an application to stay this Court's order. Be that as it may, we believe that viewed both from its posture in the trial court and at this juncture of the proceedings, when the totality of the factors and the circumstances are considered, the appellants have not stated grounds upon which a stay order can be, or should have been, granted. We find no abuse of the trial court's discretion in denying the order.

ADMINISTRATIVE PROCEDURES
Appellants contend that the Commissioner's revised order is invalid since the Commissioner failed to follow the procedures provided for such hearings and adjudications by the Administrative Procedure Act. In this connection, appellants complain of the Commissioner's failure to produce Inexco's "proposed order" with the record when the record was sent to the district court, and the failure to have the proposed order served on them. They also complain that "Commissioner Sutton did not in fact conduct the hearing. He did appear at the calling of the docket, but left the hearing room immediately thereafter and never returned during the hearing." Appellants complain that the order should have been accompanied by "a statement of the reasons therefor and of the disposition of each issue of fact or law necessary to the proposed order." Further, appellants imply that members or employees of the agency communicated with officers or employees of Inexco outside of the hearing. Appellants assert that the Commissioner failed to make appellants' counsel's post-hearing letter a part of the record of the hearing. They additionally contend that the record before the trial court was not complete. The appellants then insist that if any one of the alleged errors is not in itself sufficient to warrant a reversal of the Commissioner's order, "it is submitted that the combination of these errors supports a finding that the order was made upon `unlawful procedure'...," citing LSA-R.S. 49:964G(3).
On the question of the completeness of the record, the point they make is that the record of the January hearing was not *1127 in the record of the September hearing, that a letter dated October 13, 1981, that appellants' counsel wrote to the Commissioner after the adjudication on the September hearing was not in the record, and that a "proposed order" furnished by Inexco's counsel to the Commissioner's staff at the September hearing was not in the record. There is no doubt that each of these items (except for the post-hearing letter) was available to the agency when it made its adjudication. The trial judge stated in his written reasons that the items were part of the record before the court. The items are part of the record on this appeal. The interests of the Summers group were fully represented at both hearings. Counsel for the appellants wrote the post-hearing letter with which he is concerned. The proposed order was presented to the agency at the hearing in the presence of appellants' counsel without objection. We find that the items under discussion were made a part of the record, and that the record was complete. LSA-R.S. 49:964D. Even if we assume that the items were not timely made available to counsel for appellants, there is no showing that the rights of the appellants were in any way prejudiced by such an oversight. The plaintiff's position in opposition to the revision of the production unit was ably and vigorously advanced at the public hearing. Moreover, the applicable statute, LSA-R.S. 49:964D, seems to anticipate that the administrative record will not always be "complete" when transmitted by the agency to the reviewing court, since it provides that the court "may require or permit subsequent corrections or additions to the record."
If there were a violation in this respect, we consider it to have been merely a technical violation which did not impair substantial rights of the appellants. See Durousseau v. Louisiana State Racing Com'r., 399 So.2d 1288 (La.App. 4th Cir.1981). Agency action will not be overturned for harmless procedural error.
Plaintiffs also contend that they were not served with a copy of Inexco's proposed order. Failure to serve a copy of the proposed order on the plaintiffs, if such was required, is not fatal where the plaintiffs' counsel was present when the proposed order was presented to the Commissioner and he was fully aware of the substance of the proposed order. We find that the plaintiffs were not prejudiced by the lack of service of the proposed order on them. See Brown v. Sutton, 356 So.2d 965 (La.1978).
There is no evidence in the record indicating that the Commissioner was not present during the entire proceedings. There is no evidence in the record of any communications between the officers and employees of the agency and the officers and employees of the oil company. If, in fact, the Commissioner did leave the hearing room without participating in the hearing, as appellants' counsel asserts in the brief, there was every opportunity in the trial court for appellants to present evidence to establish this; no evidence was offered. Judicial review in the trial court was based entirely on the record made of the evidence taken at the administrative hearing. Appellants are not now in a position to try to supplement the record of the proceedings by the assertion in their brief of a version of who was actually present and what really transpired at the public hearing. As far as the record shows, Commissioner Sutton was present throughout the hearing, and no ex parte communication with any party by the Office of Conservation is reflected in the record. Assertions and arguments in brief on appeal of facts not established by the evidence in the record cannot be considered by the reviewing court. Counsel's brief, like counsel's argument, is not evidence at any stage of a judicial proceeding.
It is the further argument of the appellants that the trial court erred in its approval of the standard of proof imposed by the Commissioner on the proponents at the September 2, 1981 public hearing, i.e., a "preponderance of the evidence." Appellants assert that a more demanding burden of proof than that approved by the trial judge was required to dissolve the original *1128 order No. 1054-A. They contend that under the express provisions of LSA-R.S. 30:12, the original order was "prima facie valid" and entitled to a presumption that it was true and correct. Hence, the burden of proof that Inexco should have been required to meet, was prove to "a reasonable certainty" that it was entitled to dissolution of the original order and to the granting of a revised order.
Appellants have misconstrued the relief sought by the proponents at the hearing for revision of the unit. The issue was not the correctness of the original order. The issue was whether or not new developments, i.e., the shaling out in M M Summers # 5 warranted a revision of the established unit. The September 2, 1981 public hearing was not a rehearing or appeal of order No. 1054-A, which would bring LSA-R.S. 30:12 into play; rather the September hearing was a new hearing to determine if the new developments necessitated a reduction in the acreage comprising the production unit. LSA-R.S. 30:9B. Since this was a new hearing, the trial court did not err in finding that the Commissioner properly held the proponents to the proper standard of proof, i.e., a "preponderance of evidence."
The gist of appellants' next complaint is that the Commissioner's order No. 1054-A-1 fails to comply with LSA-R.S. 49:957 and 958 in that it "did not contain a concise and explicit statement of the underlying facts supporting the findings, did not contain a statement of the reasons therefor," and in general, it contained only "conclusionary statements."
In deciding that the findings of fact and the reasons for decision by the Commissioner were adequate, the trial judge in his Written Reasons for Judgment stated:
Finding No. 3 of Order No. 1054-A-1 dated October 5, 1981, provides:
"That the available geological and engineering evidence indicates that the unit shown on the plat labeled `Inexco Oil Company Exhibit No. 2 for Docket No. 81-667,' a copy of which is attached hereto, is reasonable and should be adopted, that said unit can be efficiently and economically drained by one well; and that creation of such unit should reasonably assure to each separate tract included therein an opportunity to recover its just and equitable share of the contents of the reservoir."
In examining Exhibit No. 2 attached to Findings No. 3, the Commissioner defined the geographical limits of the Db-3 Reservoir A by a fault as the westerly boundary, by a shale line as the northeasterly boundary, and by a gas-water contact as the remaining boundary of the unit. Exhibit No. 2 shows that the shale line runs through Massie Miller Summers No. 5 Well, thus the Db-3 Sand has shaled-out in Massie Miller Summers No. 5 Well.
This Court finds that the Commissioner's Findings (3), including Exhibit No. 2 constitute sufficient findings as required by Section 958.
While the administrative agency must articulate the basis for its decision, where the findings and reasons therefor are necessarily implicit in the record and the record readily yields substantial evidence to support the administrative determination, the administrative order is not invalid merely because of the agency's failure to make explicit its finding which was already self evident. See Baton Rouge Water Works v. La. Pub. Serv. Comm., 342 So.2d 609 (La.1977); see also, Giallanza v. Louisiana Public Serv. Com'n., 412 So.2d 1369 (La.1982); Brown v. Sutton, supra.
The order about which appellants complain is not a proposed order as they aver; it is a final order. Thus, LSA-R.S. 49:957 is clearly inapplicable. The pertinent statute in this respect is LSA-R.S. 49:958, which governs final orders and reads as follows:
A final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts *1129 supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding. Parties shall be notified either personally or by mail of any decision or order. Upon request, a copy of the decision or order shall be delivered or mailed forthwith to each party and to his attorney of record. The parties by written stipulation may waive, and the agency in the event there is no contest may eliminate, compliance with this Section.
The Commissioner's order does comply with the applicable statute. We find that the trial court did not err on this issue. Furthermore, in cases presenting only simple issues for judicial review, where the findings and reasons for the Commissioner's action are necessarily implied by the record, and where the court's study of a brief administrative record readily yields sufficient evidence to support the administrative determination, the court will refuse to remand for the formality of having the Commissioner make explicit his findings. See Giallanza v. Louisiana Public Serv. Com'n, supra.

JUDICIAL REVIEW
In considering an order of the Commissioner, the courts are not limited to the determination of whether or not the order is supported by substantial evidence; they are obligated to give a full review to the facts of a particular case, because the courts have the duty of determining the validity and reasonableness of the order. See Mobil Oil Corporation v. Gill, 194 So.2d 351 (La.App. 1st Cir.1966), writ denied, 250 La. 174, 194 So.2d 738 (1967). The courts also have the duty to determine if substantial rights of a party have been prejudiced through arbitrary and capricious action of the Commissioner, and if the Commissioner's order is manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. LSA-R.S. 49:964G(5) and (6).
However, the court is not empowered to substitute its judgment for that of the Commissioner. In other words, the Commissioner's decision that has a rational basis in the administrative record should be upheld. The court's concern must be with whether the Commissioner's factual determinations are arbitrary and capricious, or otherwise unlawful. Mobil Oil Corporation v. Gill, supra.
The general principle governing judicial review of administrative decisions is that, if the evidence as reasonably interpreted supports the determination of an administrative agency, its orders are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious. Baton Rouge Water Works v. La. Pub. Serv. Comm., supra.
In the present case, despite the several procedural questions raised, the precise issue before us for review is relatively simple: Was the Office of Conservation arbitrary and capricious in accepting the testimony of the expert witnesses presented by the proponent of the proposed revised production unit, which testimony was contradicted by opponents' experts, as the basis for its decision to exclude a certain portion of the opponents' acreage in forming the new production units? After a careful reading of the record, we are of the opinion that the Commissioner's order of which appellants complain is not arbitrary and capricious under the circumstances of this case. Extensive evidence, both documentary and testimonial, was presented at the public hearing.
On behalf of Inexco, A.J. Davis, a Development Geologist with Inexco, qualified as an expert in petroleum geology. Davis testified that the Db-3 Sand was found to be nonproductive (from the electric log analysis) in the M M Summers # 5 well; it was shaled out. Davis stated that in light of the evidence available to him, he considered that the north third of the original unit was unproductive. The M M Summers # 5 well was lost immediately after it penetrated the Db-3 Sand. It was impossible for Inexco to test the sand in question under the circumstances.
*1130 Jack E. Kimmons, a Reservoir Engineer with Inexco, qualified as a petroleum engineer. Kimmons testified to the proposed revised unit of approximately 157 acres. He stated that the revised unit suggested on behalf of Inexco would be large enough to encompass the anticipated production from the unit well.
Inexco was also supported by the expert witness for Broussard Land Company, also a lessor of Inexco. He testified that the entire northern part of the original unit was shaled out and should be excluded.
The expert witnesses for the Summers group testified that there was no shale out of the Db-3 Sand on the Forked Island Structure. They did, however, file a counterplan which showed some degree of shale out and excluded some acreage from the unit, but considerably less than that acreage excluded by the Inexco proposal.
An administrative agency may use its own judgment in evaluating evidence as to a matter within its expertise; it may accept or reject, in whole or in part, testimony of an expert which is, generally speaking, an expression of opinion on the matter under consideration. See Baton Rouge Water Works v. La. Pub. Serv. Comm., supra; 73 C.J.S. Public Administrative Bodies and Procedure § 126 (1951). In the instant case the Commissioner's office relied not only on its own expertise, but also on the expert testimony of A.J. Davis, a petroleum geologist, and Jack E. Kimmons, a petroleum engineer. Moreover, we note that one of the experts who testified for the opponents presented a counterplan which acknowledged that a certain portion of the acreage within the original unit was nonproductive.
We have examined the entire record carefully, as the district court did, with particular regard for the testimony of the expert witnesses. We find no error in the Commissioner's acceptance of the experts of the proponents over those of the opponents. LSA-R.S. 49:464(G)(6) dictates that due regard should be given to the agency's determination of credibility when it has had an opportunity to judge the credibility of the witnesses by firsthand observation. There is substantial evidence in the record to support the Commissioner's findings of fact.
On the question of the alleged arbitrariness of the Commissioner, the trial judge, in his written reasons, remarked:
Order No. 1054-A provided that the Commissioner would conduct future public hearings concerning the boundaries of the unit when it received geological and engineering information indicating a need to change the boundaries.
The September 2, 1981, public hearing presented such a contemplated meeting. At this meeting it was found that the Db-3 Sand, Reservoir A, was shaled-out in the Massie Miller Summers No. 5 Well. With this information, the Commissioner concluded that a portion of the original unit for the Db-3 Sand, Reservoir A, was not contributing productive acreage to that unit and that, therefore, the unit should be revised to eliminate that non-productive portion. The elimination of acreage from a drilling production unit based on the shaling-out of a sand within the geographical confines of the unit is not arbitrary and capricious. Failure to eliminate non-production acreage in a unit would be arbitrary and capricious.
We find that the plaintiffs have failed to carry their burden of proof to show that the Commissioner's order was arbitrary and capricious. LSA-R.S. 30:12; Dunn v. Sutton, 378 So.2d 485 (La.App. 1st Cir.1979), writ granted on the procedural question of injunctive relief, 381 So.2d 1221 (La.1980).
Therefore, for the above and foregoing reasons, the judgment of the district court is affirmed at appellants' costs.
AFFIRMED.

APPENDIX A

STATE OF LOUISIANA OFFICE OF CONSERVATION BATON ROUGE, LOUISIANA
 ___________, 1981

*1131 ORDER NO. 1054-A-1
Order concerning dissolution of the unit created by Office of Conservation Order No. 1054-A, and the simultaneous creation of a revised drilling and production unit for the Db-3 Sand, Reservoir A, in the FORKED ISLAND FIELD, Vermilion Parish, Louisiana.

* * * * * *
Pursuant to power delegated under the laws of the State of Louisiana, and particularly Title 30 of Louisiana Revised Statutes of 1950, and after a public hearing held under Docket No. 81-667, in Baton Rouge, Louisiana, on September 2, 1981, upon the application of Inexco Oil Company, following legal publication of notice and notice in accordance with the rules of procedure prescribed by the Commissioner of Conservation, the following order is issued and promulgated by the Commissioner of Conservation as being reasonably necessary to conserve the natural resources of the State, to prevent waste as defined by law, to avoid the drilling of unnecessary wells, and otherwise to carry out the provisions of the laws of this State.

DEFINITION
The Db-3 Sand, Reservoir A, in the Forked Island Field, was fully defined in Office of Conservation Order No. 1054-A, effective January 7, 1981.

FINDINGS
The Commissioner of Conservation finds as follows:
1. That Office of Conservation Order No. 1054-A, effective January 7, 1981, established rules and regulations and created a drilling and production unit for the exploration for and production of gas and condensate from the Db-3 Sand, Reservoir A, in the Forked Island Field, Vermilion Parish, Louisiana.
2. That the additional geological and engineering data obtained since the issuance of Office of Conservation Order No. 1054-A indicate that the unit created by said Order should be dissolved and, simultaneously, that the adoption of rules and regulations and the creation of a revised drilling and production unit for the Db-3 Sand, Reservoir A, are necessary to insure orderly development, to prevent waste, and to avoid the drilling of unnecessary wells.
3. That the available geological and engineering evidence indicates that the unit shown on the plat labeled "Inexco Oil Company Exhibit No. 2 for Docket No. 81-667", a copy of which is attached hereto, is reasonable and should be adopted; that said unit can be efficiently and economically drained by one well; and that creation of such unit should reasonably assure to each separate tract included therein an opportunity to recover its just and equitable share of the contents of the reservoir.
4. That the separately owned tracts, mineral leases and other property interests within the unit created herein should be force pooled and integrated with each separate tract sharing in unit production on a surface acreage basis of participation.
5. That the well shown on the unit plat, reference Finding No. 3 hereof, should be designated as the unit well for the unit created herein.
6. That Inexco Oil Company should be designated as operator of the unit created herein.

ORDER
NOW, THEREFORE, IT IS ORDERED THAT:
1. The unit created for the Db-3 Sand, Reservoir A, by Office of Conservation Order No. 1054-A, effective January 7, 1981, be and it is hereby dissolved and, simultaneously, the unit shown on the plat labeled "Inexco Oil Company Exhibit No. 2 for Docket No. 81-667", a copy of which is attached hereto and made a part hereof, be and it is hereby approved and adopted as a drilling and production unit for the exploration for and production of gas and condensate from the Db-3 Sand, Reservoir A, in the Forked Island Field, Vermilion Parish, Louisiana.
*1132 The unit has not been surveyed, and when a survey plat of said unit showing the exterior limits thereof, the total acreage therein, and the acreage in each separately owned tract, has been submitted to and accepted by the Commissioner of Conservation or any member of his staff, insofar as it shows the exterior limits of the unit, said plat shall be substituted for the above exhibit and made a part of this order by reference. In the event of conflicting claims of ownership of acreage in the unit, such acreage may be so identified on the survey plat. Such identification of acreage subject to conflicting claims shall not be construed as an acknowledgment of the validity of any such claims, and shall not affect any other acreage in separately owned tracts in the unit.
The survey plat shall be prepared in accordance with the requirements for unit plats and survey plats adopted by the Commissioner of Conservation. It is recognized that the exterior boundary lines of the unit, as surveyed, may differ from those lines as shown on the attached plat because of the requirement that by survey the geologically significant wells be correctly located with respect to each other and to the unit boundary lines that they control.
2. The separately owned tracts, mineral leases and other property interests within the unit created herein are hereby pooled, consolidated, and integrated in accordance with Section 10, Title 30 of Louisiana Revised Statutes of 1950, with each tract sharing in unit production in the proportion that the surface area of such tract bears to the entire surface area of said unit. Also, all operations on and production from such unit shall be considered operations on and production from each of the separate tracts within said unit and under the terms of each of the mineral leases affecting said tracts.
3. The unit well is designated in accordance with Finding No. 5 hereof.
4. The operator of the unit created herein is designated in accordance with Finding No. 6 hereof.
5. Except to the extent contrary herewith, the provisions of Office of Conservation Order No. 1054-A and applicable Statewide Orders shall apply to the unit created herein.
6. When there is obtained additional geological and engineering information which would indicate a required change or revision in the unit boundaries as adopted herein, or which would indicate a required change or revision of other provisions of this order, the party or parties in possession of this additional information shall petition the Commissioner of Conservation for a public hearing for the purpose of considering appropriate changes.
This Order shall be effective on and after September 2, 1981.
 OFFICE OF CONSERVATION
 OF THE STATE OF LOUISIANA
 ______________________________
 R.T. SUTTON
 COMMISSIONER OF CONSERVATION
Inexco Oil Company Exhibit No. 2 for Docket No. 81-667 attached.
NOTES
[1] LSA-R.S. 49:951 et seq.
[2] The M M Summers # 3 well discovered the Db-3 Sand, Reservoir A, in the Forked Island Field. This well was subsequently designated the unit well.
[3] See Appendix A attached hereto.