KUHN, Judge.
This is an appeal from the trial court’s judgment remanding a petition for judicial review of the denial by the Louisiana Insurance Rating Commission (“the LIRC”) of a request for a rate increase by plaintiffs, State Farm Fire and Casualty Company and State Farm General Insurance Company (“State Farm”), to the Commissioner of Insurance (“Commissioner”) for a hearing. We vacate the trial court’s ruling and affirm the determination of the LIRC.
I. The LIRC
The LIRC was created in 1948 as a seven-person board appointed by the Governor and the Commissioner. La. R.S. 22:1401(A). Prior to the creation of the LIRC, the power to fix equitable insurance rates had been shared amongst various divisions. However, those divisions were abolished and the powers, duties and functions of those various divisions were vested with the LIRC. La. R.S. 22:1401(F); see Employers-Commercial Union Ins. Co. v. Bernard, 303 So.2d 728, 730 (La.1974). The statutory authority vesting jurisdiction to fix equitable rates in the LIRC and setting forth the criteria for the LIRC’s regulation of rates is located in Part XXX of the Insurance Code, La. R.S. 22:1401-1424, and is entitled “Louisiana Insurance Rating Commission and Rate Regulation.” As this court has noted, the legislature intended the LIRC to function primarily for the purpose of regulating the rates of insurance companies doing business in this state, to promote fairness of such rates to both the public and insurance companies, and in general promote and protect the public interest insofar as insurance rates are concerned. Guillory v. Louisiana Insurance Rating Commission, 357 So.2d 599, 602 (La.App. 1st Cir.), writ denied, 358 So.2d 632 (La.1978). The LIRC may approve in whole or part any application for rate change brought by an insurer before the LIRC. La. *821 R.S. 22:1401(1). Section 1404 of the Insurance Code provides the LIRC with detailed guidelines for rate making.
JsII. Factual and Procedural Background
In June 1995, State Farm made a rate filing with the “LIRC” pursuant to La. R.S. 22:1401-1424 for its Rental Dwelling Program (“RDP”) insurance policy. The initial filing requested a rate increase of 7.2% for the RDP policy; however, after correspondence with LIRC actuary, Richard Piazza, State Farm amended its request to a rate increase of 2.8%. On July 28, 1995, at a meeting of the LIRC, State Farm’s 2.8% increase was denied by the membership. On August 15, 1995, State Farm filed with the Commissioner a petition requesting a hearing. Attached to the petition was a motion requesting that the hearing be conducted before either the Commissioner or a hearing officer appointed by the Commissioner. The petition urged that LIRC’s denial of its request for a rate increase was arbitrary, capricious and unjustified. In its prayer, State Farm requested a hearing to enable it to present evidence to support its request for a rate increase. After an Administrative Law Judge denied State Farm’s motion requesting that the hearing be held before the Commissioner or a hearing officer,[1] the petition was routed to the LIRC. The LIRC thereafter scheduled a hearing for September 20, 1995, to allow State Farm to present evidence; the hearing was rescheduled by the LIRC for October 17,1995.
At the LIRC hearing on October 17, 1995, evidence was presented by State Farm in support of its request for a rate increase of 2.8%. The matter was taken under advisement, and the following day, at a regularly-scheduled LIRC meeting, the membership upheld their denial of State Farm’s request for a rate increase.
On November 21,1995, State Farm filed a pleading entitled “Petition for Appeal from the Decision of [LIRC]” in the Nineteenth Judicial District Court seeking judicial review of the denial of their request for a rate increase. On April 30, 1996, State Farm filed La rule to show cause, urging the matter be summarily heard and determined. A hearing was held before the trial court, and the matter was taken under advisement.[2] By minute entry dated October 9, 1996, the trial court remanded the matter to the Commissioner. A judgment in conformity with the minute entry was signed on November 7, 1996. Both the LIRC and State Farm have appealed, asserting that the trial court erred in remanding the matter to the Commissioner. Both parties urge that we conduct a judicial review of the LIRC determination.
III. The Trial Court’s Ruling
The trial court’s judgment states in pertinent part, “IT IS ORDERED, ADJUDGED AND DECREED that this matter be remanded to the Commissioner of Insurance as required by LSA-R.S. 22:1351, et seg.” (Emphasis added.)
The trial court did not issue reasons for its determination; however, we construe the trial court’s ruling to be premised on the application of La. R.S. 22:1418, which states in pertinent part:
Any insurer ... aggrieved by any order or decision of the [LIRC] ... made without hearing, may within thirty days after notice of the order to the insurer ... make written request to the commission for a hearing thereon. Any hearing under this Part and any review of any action taken by the [LIRC] shall be in conformity with the procedure set forth in Part XXIX. (Footnote omitted.)
*822 Part XXIX, located at La. R.S. 22:1351-1367, is entitled “Administrative Orders, Hearings and Appeals.” La. R.S. 22:1351 provides in relevant part:
The commissioner of insurance, or any qualified employee of the insurance department designated by him for the purpose, may hold a hearing for any purpose within the scope of this [Insurance] Code as he may deem necessary. He shall hold a hearing:
(1) If required by any provision of this Code, or
(2) Upon written demand for a hearing made by any person aggrieved by any act, threatened act, or failure of the commissioner of insurance to act....
|sThe trial court apparently reasoned that the language in § 1418, providing that “any review of any action taken by the [LIRC] shall be in conformity with the procedure set forth in Part XXIX,” implicitly required the Commissioner to review the LIRC determination and, thereafter, issue an order based on that review. Thus, the trial court must have determined that under § 1351(1), the Commissioner is mandated (pursuant to § 1418) to hold a hearing. Because the Commissioner did not review the action of the LIRC and issue an order or decision based on that review, the trial court remanded the matter, implicitly concluding that State Farm had not yet exhausted administrative remedies and, therefore, the matter was not ripe for judicial review.
The objection of prematurity for failure to exhaust administrative remedies must be raised in a dilatory exception. La.C.C.P. art. 926; Bryant v. City of Baton Rouge, 615 So.2d 884, 886 (La.App. 1st Cir.1992), writs denied, 616 So.2d 708 (La.1993); see Turner v. Maryland Casualty Co., 518 So.2d 1011, 1016-17 (La.1988); see also Jarrell v. American Medical International, Inc., 552 So.2d 756, 759 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1282 (La.1990). Failure to plead a dilatory exception prior to filing an answer constitutes a waiver. La. C.C.P. art. 928.
Because the LIRC never raised the objection of failure to exhaust administrative remedies although it had answered State Farm’s petition for judicial review, the dilatory exception of prematurity was waived. Accordingly, we conclude the trial court erred in remanding the matter for a hearing before the Commissioner, and we vacate that ruling.[3]
lijlV. Judicial Review
Mindful of the principles of judicial economy and in conformity with the request of the parties, because the record is complete, we will review this matter and render *823 judgment in accordance with La.C.C.P. art. 2164[4] rather than remand the case for further proceedings.[5]
The standards of review as set forth in the Louisiana Administrative Procedure Act, La. R.S. 49:950-970, are applicable to proceedings of the LIRC. See Liberty Mut. Ins. Co. v. Louisiana Ins. Rating Comm’n, 589 So.2d 70, 71 (La.App. 1st Cir.1991), writ denied, 590 So.2d 597 (La.1992).[6]
|7The standard of review for the appellate court is multifaceted. Historically, when reviewing the factual findings of an administrative agency, such as the LIRC, the appellate court was required to apply the manifestly erroneous or clearly wrong standard of review. La. R.S. 49:964(G)(6) (prior to amendment by Acts 1997, No. 128); Liberty Mut. Ins. Co., 589 So.2d at 71-72.
By Acts 1997, No. 128, the Administrative Procedure Act was amended to provide that upon judicial review of an adjudication, the reviewing court may reverse or modify a decision if “substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are ... [n]ot supported and sustainable by a preponderance of the evidence as determined by the reviewing court.” Further, “[i]n the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review.” The act further provides that it “shall apply to all cases in which a decision has not been rendered on appeal as of the effective date of this Act.” Because the act became effective on June 12,1997, it is applicable to the matter presently before us.
State Farm maintains the LIRC decision is not supported and sustainable by a preponderance of the evidence, and there *824 fore, is arbitrary and capricious. In so contending, State Farm suggests that their request of a 2.8% rate increase is fully supported by the data, and that the LIRC presented absolutely no evidence to the contrary. The focal point of State Farm’s argument is that because the LIRC actuary, Richard Piazza, indicated that he had “no actuarial objection” to the 2.8% rate increase requested by State Farm, the denial by the LIRC on the basis that the rate increase “was not statistically justified” is not in conformity with the statutory requirements for rate making consideration. Thus, State Farm urges, the | «decision of the LIRC denying the rate increase is arbitrary and capricious because it is not supported and sustainable by a preponderance of the evidence.
La.R.S. 22:1402 expressly states the purpose of rate regulation as follows:
The. purpose of this Part is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory, and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of this Part. Nothing in this Part is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit or encourage, except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. This part shall be liberally interpreted to carry into effect the provisions of this Section.
La.R.S. 22:1404 sets forth the statutory guidelines regulating the LIRC’s making of rates and provides in relevant part:
All rates shall be made in accordance with the following provisions:
(1) Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to past and prospective expenses both countrywide and those specially applicable to this state, and to all other relevant factors within and outside this state.
(2) Rates shall not be excessive, inadequate or unfairly discriminatory.
‡ ‡ ‡ ‡ ‡
(6) The term “rate” as used in this Part shall include, as the context may require, either the premium to be paid by or charged to the insured for insurance ... or the elements and factors forming the basis for the determination of the premium....
At the October 17, 1995 hearing of this matter, State Farm presented the testimony of the actuary for the LIRC, Richard Piazza, as well as that of State Farm actuary, Mark Bannon. Additionally, numerous exhibits were admitted into evidence, including the entire State Farm filing; additional documentation requested by the LIRC of State Farm; LIRC actuary Piazza’s indication that he had no actuarial objection to State Farm’s rate request; the initial notification by the LIRC of its denial of State Farm’s application; and the notification by the LIRC of its final denial of State Farm’s application on the basis that the 19LIRC found the request not to be “statistically justified”; as well as earlier deposition testimony of LIRC actuary Piazza.
State Farm actuary Bannon testified regarding the information provided to the LIRC by State Farm. He stated that the documentation, entitled “Experience Underlying Rate Revision Filing” (Exhibit 2, Attachments A-l and A-2; and Exhibit 4) which State Farm was required by the LIRC to supply, did not include information on State Farm’s expenses or make an adjustment for catastrophe losses and suggested that as a result, the LIRC did not consider State Farm’s profitability in its determination. However, Bannon conceded that the documentation required of the LIRC also did not reflect adjustment income for investments and interest collected by State Farm on premium income. He also acknowledged that the present premiums collected by State Farm for “the past decade or so” include a catastrophe smoothing element. Bannon testified that the 1994 expense ratio for State Farm, which included all expenses other than *825 loss adjustment expenses, was “just under thirty percent of earned premium”; and agreed that State Farm’s standard and usual expense ratio was between thirty and thirty-three percent. The State Farm actuary indicated that the last rate increase for State Farm was in October 1993. Reviewing the LIRC-required documentation for 1993, Ban-non admitted that State Farm’s projected loss ratio was 58.6 percent; and when the 30 percent expense ratio was added, State Farm was still operating at approximately 88 percent of its total revenues. In so admitting, Bannon took into consideration that the smoothing adjustment necessary to reflect catastrophe losses would be offset by the adjustment necessary to reflect investment and interest income earned on premiums collected by the insurer. Bannon then conceded that in both 1993 and 1994, State Farm had made an underwriting profit on its RDP coverage.
Through both deposition testimony and his testimony before the LIRC, actuary Piazza explained that what an actuary reviewing, or the insurance company making a filing, attempts to do is to estimate what future costs are going to be and then tries to develop rates based on those anticipated future costs. He testified that while Louisiana’s statutory | ^requirements that rates not be excessive or inadequate involve actuarial principles, he believed the scope was broader than merely the actuarial aspect. Describing documents entitled “Experience Underlying Rate Revision Filing,” Piazza stated the documents reflected loss adjustment expenses although they did not include operating expenses incurred by State Farm or a loss smoothing adjustment for catastrophes. The LIRC actuary testified that the LIRC required all insurers making a filing to provide the information supplied in the “Experience Underlying Rate Revision Filings” documentation. Piazza explained that lines 1-5 of the required documentation deal with the income that comes into an insurer through premi-urns; and that lines 6-15 represent the claim losses the company has for the same period of time. Although Piazza testified that unless the LIRC membership reviewed the entire State Farm filing, the required documentation would not permit a determination of whether or not an insurance company is profitable, he stated that the information in the “Experience Underlying Rate Revision” document provided an actuarial methodology for determining whether a company’s rate request was excessive or inadequate or somewhere in between. Piazza’s recollection of the LIRC’s denial of the rate request by State Farm was that the membership, having reviewed the information supplied in “Experience Underlying Rate Revision Filing,” concluded that State Farm’s rate level for RDP was doing well and that the company was profitable in Louisiana in the RDP line. According to Piazza, based on the earned premium income collected by State Farm compared to actual incurred (claims) losses by State Farm, the LIRC decided that no additional actuarial analysis of the data regarding State Farm’s rate making would be undertaken. Piazza stated that as a result, State Farm was notified that its request for a rate increase was not “statistically justified.” [7]
| nBased on our evaluation of the record reviewed in its entirety, we conclude the findings implicit in the decision of the LIRC are supported and sustainable by a preponderance of the evidence. Accordingly, we cannot say that the LIRC was arbitrary or capricious in its denial of State Farm’s request for a rate increase.
Y. Conclusion
For the reasons set forth herein, we vacate the trial court’s judgment remanding this matter to the Commissioner of Insurance. We affirm the decision of the LIRC denying State Farm’s request for an increase in its rates for RDP insurance. All costs of this proceeding are assessed against State Farm.
*826 TRIAL COURT JUDGMENT VACATED; DECISION OF THE LOUISIANA INSURANCE RATING COMMISSION AFFIRMED.

. In this appeal, State Farm does not seek a remand as relief for the Administrative Law Judge’s denial of its motion for a hearing before the Commissioner or a hearing officer. Although State Farm argues extensively regarding the alleged procedural defects in the LIRC’s denial of the request for a rate increase, they suggest that the defects constitute an "unlawful procedure” under La. R.S. 49:964(G)(3) and urge that in our judicial review of the LIRC’s decision denying the increase, under Dixie Electric Membership Corp. v. Louisiana Public Service Commission, 441 So.2d 1208, 1211 (La.1983), the LIRC determination is not entitled to any deference in its interpretation of legislation and jurisprudence.

. The minutes indicate the matter was presented for hearing on July 9, 1996, and again on August 26, 1996.

. We find it noteworthy that on appeal defendants, the LIRC and the Commissioner, jointly urge that we apply the doctrine of contemporaneous construction to resolve any ambiguity created as a result of attempting to reconcile the language "any review of any action taken by the [LIRC] shall be in conformity with the procedure set forth in Part XXIX" provided for in § 1418 with the provisions of § 1351(1). The doctrine of contemporaneous construction is a rule of statutory construction which provides that when an administrative body has placed an interpretation upon a legislative enactment over a long period of time, that interpretation is entitled to great weight. See State v. B.P. Exploration & Oil, Inc., 96-0716, p. 10 (La.1/14/97); 686 So.2d 823, 828; Swetman v. Teachers' Retirement System of Louisiana, 578 So.2d 149, 151 (La.App. 1st Cir.), writ denied, 577 So.2d 16 (La.1991). The LIRC and the Commissioner urge that since the Executive Reorganization Act (see generally La.R.S. 36:686 and 36:802), they have both interpreted La.R.S. 22:1418 to mean that "any review of any action taken by the [LIRC]” as giving the aggrieved insurer the right to a hearing before the LIRC (to put on evidence, thereby safeguarding the insurer’s due process rights). Thus, as defendants, neither the Commissioner nor the LIRC contend that State Farm's request for judicial review is premature for failure to exhaust administrative remedies. Additionally, as noted supra at n. 1, in this appeal, State Farm does not seek as relief that the matter be remanded as a result of the denial of their motion for a hearing before the Commissioner or, alternatively, a hearing officer by the Administrative Law Judge. Moreover, based on our review of the record, it is clear that State Farm has had a full hearing and has been given the opportunity to present evidence in support of their request for a rate increase; there is no contention that they have additional evidence to support their request.
To the extent that the trial court applied La. R.S. 22:1351 without reference to § 1418, we likewise find the determination to be erroneous. Absent an application of § 1418, nothing in the plain language of § 1351 requires the Commissioner to hold a hearing under the facts of this case.

. La.C.C.P. art. 2164 provides in pertinent part, "The appellate court shall render any judgment which is just, legal and proper upon the record on appeal."

. Although the LIRC did not issue specific factual findings in support of its denial, see La. R.S. 22:1418 and La. R.S. 49:958, where the findings- and reasons therefore are necessarily implicit in the record and the record readily yields substantial evidence to support the administrative determination, the LIRC's denial of State Farm's rate increase request is not invalid merely because of the failure to make explicit findings. See Summers v. Sutton, 428 So.2d 1121, 1128 (La.App. 1st Cir.1983). We find it unnecessary to remand for the formalily of having the LIRC make explicit its finding which is already self evident. See Baton Rouge Water Works Co. v. Louisiana Pub. Serv. Comm’n, 342 So.2d 609, 612 (La.1977), cert. denied, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 86 (1977).

. As we have pointed out, supra in nn. 1 & 3, State Farm has argued extensively that the LIRC decision was made on unlawful procedure and therefore is not entitled to deference. The gist of their assertion is that under § 1418, referencing Part XXIX, the Commissioner or a hearing officer was required to review the LIRC denial of their request for a rate increase. Additionally, State Farm suggests that the LIRC decision was made on unlawful procedure due to its failure to hold a hearing within the 30-day time period established under La. R.S. 22:1359, and its failure to issue formal reasons for its decision and otherwise comply with § 1359 of Part XXIX of the Insurance Code. Under La. R.S. 49:964(G)(3), the unlawful procedure upon which an agency decision was made which permits a reviewing court to reverse or modify the determination requires that “substantial rights” of the appellant have been prejudiced. State Farm was given a full hearing and the opportunity to present evidence in support of its request for a rate increase. They do not contend that there is additional evidence to be considered in conjunction with this filing for a rate increase. Assuming arguendo that the complaints raised by State Farm constitute defects in the procedure which resulted in the LIRC denial of their rate request, nothing State Farm has asserted convinces us that their "substantial rights” have been prejudiced by those defects. If there were violations in this respect, we consider them to have been merely technical violations which did not impair the substantial rights of the appellants. See Summers v. Sutton, 428 So.2d at 1126-27. State Farm further contends that our determination in Summers is inapposite because it is an application of § 964(G)(3) of the Administrative Procedure Act, which is general legislation, while the defects in procedure that they are asserting stem from the application of §§ 1358 and 1359 of the Insurance Code, more specific legislation. Again, assuming State Farm’s assertion (that under § 1418 of the Insurance Code, §§ 1358 and 1359 apply to a decision of the LIRC) is correct, State Farm has not presented any justification for this court to deviate from the standards established under the Administrative Procedure Act. Accordingly, we find no merit in State Farm’s contention that this court should reverse or modify the LIRC decision because it was made on an alleged unlawful procedure.

. We note that in the transcription of Richard Piazza’s deposition testimony, the actuary was inaccurately recorded as indicating that the LIRC had notified State Farm that its request was not "sufficiently justified.” However, upon our review of the documentary evidence, see Exhibit 9, we find no indication from the LIRC to State Farm that their filing was not “sufficiently justified”; rather the July 28, 1995 letter states in pertinent part, "The Commission disapproved the filing as it felt it was not statistically justified.”